### WILHELM v. WOOD et al.

(Supreme Court, Appellate Division, Second Department. May 29, 1912.)

1. EVIDENCE (§ 69*)—PRESUMPTIONS—HONESTY AND FAIR DEALING.

In an action on a contract to purchase the lease of a gas company, provided its validity was favorably passed on by defendants' attorney, where the attorney had not passed favorably thereon, and where plaintiff alleged a fraudulent conspiracy between defendants and the attorney to prevent a favorable report and so defeat the plaintiffs' contract rights, the defendants and their attorney were entitled to the presumption of honesty and fair dealing.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 90; Dec. Dig. § 69.*]

2. CONTRACTS (§ 221*)—APPROVAL OF ATTORNEY—FRAUD.

Parties accepting or purchasing a lease on condition that it was approved by their attorney did not undertake to guarantee that he was a competent lawyer, or that he would, upon any given state of facts, approve the lease, but were only bound not to interfere with the securing of such approval; and the attorney owed no duty to the other party, except that he should not be a party to a conspiracy to deprive plaintiff of his rights under the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1015–1032; Dec. Dig. § 221.*]

3. FRAUD (§ 50*)—PRESUMPTION AND BURDEN OF PROOF.

There is no presumption of fraud, and, where fraud is alleged and denied, it must be proved by a fair preponderance of the evidence.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. § 50.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. CONTRACTS (§ 292\*)—FRAUD.**

Plaintiff in an action for breach of a contract accepted upon condition of its approval by defendants' attorney, alleging a fraudulent conspiracy to prevent an approval, cannot recover unless he shows that all of the conditions were such that the attorney could not in good faith have refused his approval.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1310, 1343; Dec. Dig. § 292.\*]

**5. CONTRACTS (§ 322\*)—FRAUD—EVIDENCE.**

Evidence in an action against defendants who had accepted a lease conditioned upon the approval of their attorney, where plaintiff alleged defendants' fraudulent conspiracy to prevent such approval, *held* not sufficient to show such fraudulent conspiracy.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465, 1492, 1534–1542, 1768; Dec. Dig. § 322.\*]

Appeal from Trial Term, Kings County.

Action by Richard B. Wilhelm against Robert C. Wood and another. From a judgment of the Supreme Court on a verdict for plaintiff and from an order denying their motion for a new trial, defendants appeal. Judgment and order reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Charles F. Brown, of New York City, for appellants.

Frederick J. Moses, of New York City, for respondent.

WOODWARD, J. On the 6th day of July, 1900, H. Allen Odell, representing the defendants, wrote to Tully R. Cornick at Knoxville, Tenn., as follows:

"Dear Sir: We make you the following proposition: That we will accept the lease of the Lexington Gas Company, recently obtained by you from said company, and perform the terms and conditions of said lease.

"That we will pay to you and your associates one thousand dollars ($1,000) a year for five years, commencing at the beginning of the lease. We will further pay you and your associates the sum of ten thousand dollars ($10,000) in consideration of the transfer of said lease and for services in connection therewith, said transfer to be to our nominee.

"The only proviso which we make in this proposition is that the legalities of the deal, such as the right of leasing the property, the validity of the franchises and all other matters of that sort which arise in this transaction shall be favorably passed upon by our attorney, Mr. John J. C. Tomlinson of New York.

"That we will complete the deal on or before the 21st day of July, 1900, at Lexington, Kentucky.

"Please forward your acceptance of this proposition at once and oblige."

On the 9th day of July, 1900, Mr. Cornick, through whom the plaintiff claims in this action by reason of certain assignments of the contract, wrote to the defendants, saying:

"I have received a letter dated July 6th, 1900, signed 'H. Allen Odell, representing Wood & Havemeyer,' a copy of which is hereto attached, and beg to advise you that the proposition contained therein is accepted. I shall' be glad to place your attorney Mr. Jno. J. C. Tomlinson in communication with the attorneys at Lexington, who are fully cognizant of the charter, franchises and other details with which your counsel will wish to become familiar."

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

It is not disputed that Mr. Tomlinson has never passed favorably upon the legal questions involved in support of the lease. On the contrary, it is shown by the evidence that he had rejected the lease as not conforming to the requirements of the law, and it is admitted that, acting in good faith, this would be sufficient to defeat the plaintiff's cause of action. The contention is, however, that the defendants fraudulently conspired with Mr. Tomlinson to prevent a favorable report upon the lease, and that the transaction fell through by reason of this fact, and the jury has found in favor of the plaintiff upon this proposition. The question here presented is whether the evidence supports the plaintiff's claim in this regard.

The complaint alleges, on information and belief, that:

"Said Tomlinson was under the full direction and control of these defendants in the matters and transaction covered by Exhibits B and C hereto attached [the letters above quoted]; that said Cornick offered and made to said Tomlinson a full statement of the legal and other matters bearing upon the transaction as set forth in said exhibits, * * * and furnished said Tomlinson with full and complete data, from and upon which he could and should have promptly formulated his opinion regarding the legality of the transaction involved in said contracts within the time limited for the completion and performance thereof; that these defendants with the fraudulent and preconceived intent to default in the performance of the contract and agreement covered by and included in said exhibits * * * failed to submit the questions therein set forth to said Tomlinson, and prevented said Tomlinson from considering or passing upon the questions set forth in Exhibits B and C in the period fixed in said exhibits for closing and waived the provision therein that said Tomlinson shall pass upon same; and that, although said Cornick and his associates demanded of these defendants and of said Tomlinson a statement of their respective positions in the matters covered in said Exhibit B and his opinion regarding the legality of said transactions, said Tomlinson, who was the agent of the said defendants as aforesaid, and was under the full direction and control of said defendants in these transactions as aforesaid, at the special instance, demand, and request of said defendants, with the preconceived purpose and fraudulent intent upon their part and upon the part of said Tomlinson, of defendants defaulting in the completion of said contract, and of defeating the rights of said Cornick and his associates, neglected, refused, and failed to pass upon the legalities of the deal and other matters more particularly referred to in Exhibit B, hereto attached, favorably or otherwise, in the period named."

Still on information and belief:

"That the said Cornick and his associates promptly tendered and furnished to said Tomlinson full and complete data and information bearing upon the matters set forth in Exhibit B hereto attached, and establishing the full and complete regularity and legality of the matters therein involved sufficient in themselves to warrant, enable, and require said Tomlinson to pass upon the same and approve their legality, and demanded of said Tomlinson that he consider and pass upon the same. That the said Tomlinson willfully, unreasonably, and in bad faith, with the preconceived purpose and intent of assisting the defendants in attempting to avoid the obligations imposed upon them by said contract, neglected, failed, and refused to consider or pass upon the legalities of the deal and other matters more particularly referred to in Exhibit B hereto attached, favorably or otherwise, at all or within the time therein specified."

[1] These are serious allegations against the integrity of a lawyer whose reputation is not otherwise assailed, as well as against the defendants, and this judgment ought not to stand unless the allegations to constitute the alleged fraud are established by a fair preponderance

of evidence, for the defendants, as well as their attorney, are entitled to the presumption of honesty and fair dealing. Respondent lays stress upon the fact that in the letter of Mr. Odell to Cornick notice was given to the plaintiff that it was the approval of "our attorney" which must be had as a condition of the acceptance of the contract, and contends that it "was not incumbent upon plaintiff's assignors to submit the legal questions to Mr. Tomlinson and to procure his opinion." Whether that is so we need not decide, since plaintiffs allege that they did submit to him "a full statement of the legal and other matters bearing upon the transaction" and furnished him "with full and complete data" upon which to base his opinion.

[2] The defendants in making their proposition to accept certainly had a right to make any condition precedent which they thought proper. They had a right to make their acceptance depend upon any fact which they might name, and, having elected to make their acceptance to depend upon the approval of their own attorney, they did not undertake to guarantee that their attorney was a competent lawyer, or that he would, upon any given state of facts, approve. They simply undertook to take over the lease of the gas company's property if their attorney approved of the legality of the lease and the franchises, and their only obligation in the matter was not to interfere with the securing of this approval. His duty was measured by his duties to his clients, and the plaintiff had no claim upon him, other than that he should not be a party to a conspiracy to deprive the plaintiff of his rights under the contract. It was his duty, no doubt, to his clients, to advise them to the best of his ability upon the facts as thus presented to him, but it was his opinion as to the legality of the transaction which was made the condition of its performance on the part of the defendants, and no court or jury has any right to make any other or different condition. The plaintiff's assignor accepted this condition, and he and his associates expended their money in the transaction upon their faith that they would be able to satisfy Mr. Tomlinson of the legality of the entire transaction.

[3] There is no presumption of fraud. It must be proved, and, to meet the requirements of this case, the fraud alleged in the pleadings must be proved by a fair preponderance of evidence, for the defendants have denied all of the material allegations going to the question of fraud. To support the allegations of fraud the plaintiff calls two witnesses. The first of these is Absolom P. Bachman, who, after testifying to the matters leading up to the defendants' proposition quoted above, says:

"The week following July 6th Mr. Cornick came to New York, and he and I went to Mr. Tomlinson's office, 15 Wall street, and asked him if he had looked into the matter yet. He said it had not been referred to him. .I think that was Friday of that week. The next Monday I went to Mr. Odell's office, and asked him what was being done towards the furtherance of this matter that he and I were contracting. He said Mr. Wood wanted to go down to Lexington, and wished to start that day, and asked me if I would give a letter of introduction," etc.

After this, the witness testifies to some matters between the 16th and 20th of July, and of receiving a dispatch from Lexington on the

21st of July, in which Cornick says that none of the defendants have appeared in Lexington to close the deal, and he then tells of a conversation with Mr. Wood, one of the defendants, who somewhat petulantly told the witness that there was no need of "being so damned anxious about it. We are going to close it." This same witness testifies that he called at the office of Mr. Tomlinson on the 16th or 17th day of July, and that Mr. Tomlinson then told him that the matter had not yet been referred to him. He further says.

"I never received from Wood & Havemeyer, or from Mr. Tomlinson, or from any one representing Wood & Havemeyer, any opinion or expression of opinion on the part of Mr. Tomlinson as to the legality of this deal. Neither Wood & Havemeyer, nor anybody purporting or claiming to represent them, ever, except in the pleadings in this suit, expressed to me any reason why they failed to perform or carry out their proposal, which Mr. Cornick accepted."

This is all this witness has to say in support of the allegation of fraud, and, if there is anything in it to support the allegations of the complaint beyond the mere fact that Mr. Tomlinson on the 16th or 17th day of July had not had the matter submitted to him, we are unable to discover it. There is certainly no evidence that the defendants had any control over Mr. Tomlinson, or that they had made any effort to prevent him giving an opinion.

The only other witness called by the plaintiff on the issue of fraud was Mr. Tomlinson himself. This witness appears to have desired to be perfectly frank about the matters upon which plaintiff's counsel made inquiries, and, although his direct examination took on practically the character of cross-examination, no objections were interposed, and every opportunity was given to bring out all the witness knew about the transaction which occurred in the year 1900, and which might, very easily, be forgotten. The only result of this examination, supplemented by a single question on cross-examination, was that Mr. Tomlinson did, at some time either before or after the 21st day of July, 1900, have under consideration the question of the legality of the proposed transaction, in so far as it involved the lease and franchises, and that he passed upon the same and did not pass upon it favorably, and that he got the most of his information in reference to the proposed transaction from his clients. There is nothing to indicate that his clients gave him any false information, or that they suggested to him or intimated to him in any manner that they did not want to perform their part of the contract, provided it was lawful, and nowhere in the case, so far as we are able to discover with the aid of respondent's counsel, is there any evidence which would justify the inference that Mr. Tomlinson was under the control of the defendants in any improper way, or that he was their agent in any other sense than as counsel, or that he was in any manner misled as to the material facts going to the question of the legality of the lease or the franchises. In short, the case is barren of any evidence from which the inference of fraud may be properly drawn, and it was error to submit this question to the jury, this question being raised by the defendants' motions at the close of plaintiff's case, and again at the close of the entire case.

[4] It seems to us that the plaintiff was bound to show at least that all of the conditions were such that Mr. Tomlinson could not, in good faith, have refused to pass favorably upon the transaction, for, unless this is shown, how are we going to say that fraud was practiced? A man may do right even from a wrong motive, and, where it is not shown that his adverse report upon the proposition was not justified, how are we going to say that the failure of the defendants to perform was actuated by a fraudulent purpose? The transaction involved the payment of $10,000 at once, with $1,000 per year for five years, and the fair construction of the defendants' proposition was that they would perform the contract on or before the 21st day of July, provided their attorney approved of the transaction as being within the law. The respondent attempts to convey the impression that this refusal occurred after the default, and for the purpose of avoiding the obligation, but there is no evidence of this. The plaintiff called Mr. Tomlinson, and he says that he made inquiries in reference to the subject-matter, and that he refused to approve of the same, but whether this was before or after the 21st day of July, 1900, he is unable to state, and there is no other evidence bearing upon the question, with the possible exception of a letter written by Mr. Tomlinson on the 17th of July, in which he asked Mr. Cornick for the names of the people in Lexington who could give him information, and as this was four days before the closing day, and the distance approximately 1,000 miles away, it might be inferred that the decision was not made until a later date. But it is equally consistent with the theory that he had examined the question upon the information at hand, and had refused to approve without further information, and that the inquiry was made for this purpose.

The defendants were not called upon to act until their attorney had approved of the proposition, and, if the plaintiff's assignors had not supplied him with sufficient information on which he could come to a conclusion in support of the legality of the transaction, they have no cause for complaint, and, as we have already pointed out, the evidence in this case does not even show conclusively that the transaction was legal, assuming that such evidence would be sufficient to raise a question of good faith.

[5] We are of the opinion, however, that Mr. Tomlinson was not occupying a position where he was under any obligations to act, and that it would be necessary for the plaintiff to show conduct on the part of the defendants amounting to a conspiracy with their attorney to avoid the obligation, to warrant a recovery in this action, and such evidence is not within the record.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

HIRSCHBERG and BURR, JJ., concur. RICH, J., concurs in result.