(162 App. Div. 629)

### ATKINS et al. v. TROWBRIDGE et al. (No. 5864.)

(Supreme Court, Appellate Division, First Department. May 29, 1914.)

1. JUDGMENT (§ 235*)—PARTIES (§ 12*)—REPRESENTATIVE ACTIONS.

Where a large number of the holders of the bonds of a railroad united in executing a reorganization agreement, and defendants breached an agreement made with the bondholders' committee, appointed under the reorganization agreement, each bondholder had a personal cause of action for damages for the breach, and, while an action may be instituted by one for the benefit of all, in accordance with Code Civ. Proc. § 448, providing that where the question is one of common interest and the parties are very numerous, one or more may sue for the benefit of all, judgment can be rendered only in favor of those who originally sued, or who, after the commencement of the action and before judgment, joined as plaintiffs; this not being a case of a derivative right of action, as where a stockholder sues for the benefit of a corporation.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 414, 429; Dec. Dig. § 235;* Parties, Cent. Dig. § 12; Dec. Dig. § 12.*]

2. PARTIES (§ 40*)—JOINDER—TIME FOR JOINDER.

Where one of numerous bondholders, who assented to a reorganization agreement, instituted in his own name and in behalf of others similarly situated an action for damages for defendants' breach, the right of other bondholders to join as plaintiffs depends upon the circumstances existing when their application was made.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 60–63, 65–67; Dec. Dig. § 40.*]

3. RAILROADS (§ 152*) — CONTRACT TO PURCHASE BONDS — CONSTRUCTION — GUARANTY.

Where a contract for the purchase of railroad bonds provided for approval by the purchaser's attorney of a guaranty of the bonds, the purchaser is not liable for its refusal to carry out the agreement, where its attorney in good faith refused to approve the guaranty.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 465, 466; Dec. Dig. § 152.*]

4. RAILROADS (§ 179*)—CONTRACT TO PURCHASE BONDS—ACTION FOR BREACH—EVIDENCE.

In an action for breach of an agreement to purchase railroad bonds, where a guaranty of the bonds was to be approved by the purchaser's attorney, evidence *held* insufficient to show any approval by such attorney.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 601–604; Dec. Dig. § 179.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. RAILROADS (§ 179*)—CONTRACT TO PURCHASE BONDS—ACTION FOR BREACH.
    In an action for breach of an agreement to purchase railroad bonds,
    which were to be secured by a guaranty approved by the purchaser's at-
    torney, where plaintiffs claimed that his refusal to approve the guaranty.
    was not in good faith, an answer by the jury, in response to an interroga-
    tory whether the conduct of defendants and their counsel was in bad
    faith, that it was in bad faith if the words "bad faith" meant the break-
    ing of their word was not a finding that defendants induced their counsel
    to disapprove the guaranty as a pretext to avoid performance of their
    contract.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 601–604; Dec.
    Dig. § 179.*]

Appeal from Trial Term, New York County.

Action by Elizabeth J. Atkins, as executrix of Thomas E. Atkins,
deceased, and others against James A. Trowbridge and others. From
a judgment for plaintiffs and an order denying a new trial, defendants
appeal. Reversed, and complaint dismissed.

See, also, 147 N. Y. Supp. 275.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and DOWLING, JJ.

Henry W. Taft, of New York City, for appellants.

Hartwell Cabell, of New York City, for respondents.

SCOTT, J. This action arises out of an unsuccessful attempt in the
year 1891 and subsequent years to reorganize the Indianapolis, Decatur
& Western Railway Company. The plaintiffs represent directly cer-
tain holders of the securities of that railroad, and undertake to sue, as
stated in their complaint, "in behalf of themselves and of others simi-
larly situated who shall come in and be made parties hereto and con-
tribute to the expenses of this action." Up to the time of the entry
of the judgment from which this appeal is taken no one "similarly
situated" had come in and applied to be made a party, the action being
confined, so far as concerns the plaintiffs, to the original plaintiffs or
the personal representatives of those who had died. The defendants
are the surviving partners of the firm of Vermilye & Co., which at the
time the alleged cause of action is said to have arisen was a well-known
banking firm doing business in the city of New York. The action is
for money damages for the refusal on the part of Vermilye & Co. to
carry out a contract to purchase $2,600,000 of mortgage bonds of a
railroad corporation which it was proposed to organize to take over
and operate the line of the said Indianapolis, Decatur & Western Rail-
road Company (hereinafter styled the I. D. & W. Co.).

The material facts upon which plaintiffs rely may be briefly stated
as follows:

In the year 1891 an action was commenced, by the holders of the
first lien bonds, to foreclose their mortgage upon the I. D. & W. Co.,
and a receiver was appointed. In addition to the first mortgage bonds,
and junior thereto, were second mortgage bonds and income bonds,
and in August 1891, a large number of bondholders united in executing
a reorganization agreement, under which they appointed John B. Nis-

ley, Walter G. Hatch, and Thomas B. Atkins, a committee to act in behalf of said bondholders in purchasing the railroad property upon the foreclosure sale, and in incorporating a new company to take over the property and to issue securities. Very wide powers were given to this committee, which need not be recapitulated, since there is no claim that it exceeded its powers in any way. Among other things, the committee was empowered, in case it bought the property, to convey it to the corporation to be organized, receiving in payment therefor securities of said new company of various classes in specified amounts, among them being $2,200,000 of first mortgage bonds which were to be a lien upon all the property to be acquired at the foreclosure sale. The money to be derived from the sale of these bonds was to be devoted, so far as necessary, to the payment of the necessary expenses incurred by the committee, the balance being used to pay off, or to be exchanged for the first mortgage bonds of the I. D. & W. Co. With a view to assuring the value of these bonds to be issued the committee entered into an agreement with the Cincinnati, Hamilton & Dayton Railroad Company, an Ohio corporation, which owned and controlled the Cincinnati, Hamilton & Indianapolis Railroad Company, an Indiana corporation, that the two last-mentioned corporations would guarantee the principal and interest of the new first mortgage bonds to be issued by the corporation proposed to be organized, as a consideration for which guaranty the committee agreed to transfer to the Cincinnati, Hamilton & Dayton Company a controlling interest in the preferred and common stock to be issued by the new company. It was also proposed that the property to be acquired by the new company should be leased to the C. H. & D. Co.

The bondholders agreement with the committee provided that before it should become effective an arrangement must be made, satisfactory to the committee, with some corporation or individuals to furnish such an amount of cash as should be necessary to pay in full the first mortgage bonds upon which the foreclosure action was pending, and the committee accordingly entered into a contract with Vermilye & Co., whereby the latter firm agreed to purchase and the committee agreed to sell, not later than August 12, 1892, $2,200,000 of the first mortgage bonds of the company to be organized, principal and interest to be guaranteed by the C. H. & I. R. Co., and the guaranty to be assumed by the C. H. & D. Co. in accordance with the terms of the agreement between the committee and the C. H. & D. Co. hereinbefore referred to. In this agreement with Vermilye & Co. occurs the clause upon which this litigation turns. It reads as follows:

"All questions as to the legality of the foreclosure proceedings, and of the lease and guaranty, to be submitted to the counsel of the parties of the first part (Vermilye & Co.) to be approved by him; and the counsel fees, not exceeding $1,000 of the parties of the first part to be borne by the parties of the second part (the committee)."

It was subsequently ascertained that the original plan of reorganization had not provided for raising sufficient cash, and supplementary agreements were entered into by which the committee was authorized to issue and the railroad companies above referred to agreed to guar-

antee first mortgage bonds of the company to be organized, to the extent of $2,600,000, and Vermilye & Co. by a supplementary agreement agreed to purchase this increased number of bonds, and, except as modified, ratified and confirmed their previous agreement. This carried forward into the supplementary agreement the provisions for the approval by respondent's counsel of the legality of the foreclosure proceedings and of the lease and guaranty proposed to be made by the C. H. & D. Co. and C. H. & I. Co.

The foreclosure action went to a sale and the property was purchased by the committee, which paid $50,000 in cash, and agreed to complete the purchase in August, 1893, the time for completion being afterwards extended to September 1, 1893. No question seems to have been made as to the regularity and legality of the foreclosure action and sale. A question did present itself, however, as to the legality and validity of the proposed guaranty by the C. H. & D. Co. and the C. H. & I. Co. of the mortgage bonds to be issued by the new company which the reorganization committee had organized, or were about to organize. This question engaged the attention of the late Stephen P. Nash, the counsel of Vermilye & Co., and after considering it with evident care, he informed his clients that he could not advise them that such a guaranty would be valid. Thereupon Vermilye & Co. refused to complete the purchase of the bonds, and, as a consequence, the reorganization plan failed. Thereupon this action was begun to recover damages for their refusal. As originally drawn the complaint contained no suggestion of bad faith on the part of the defendants or their counsel, but was framed on the theory, as stated by plaintiffs' counsel on this appeal, that if the bonds and guaranty were, in fact, valid and conformable to the contract between the reorganization committee and Vermilye & Co. the latter were obliged to take them, and could not lawfully reject them because of their counsel's failure to approve, unless such refusal was based on some valid ground of objection which, in itself, would warrant a rejection.

Some time in the course of the litigation the cause came on for trial, and a jury was impaneled, but for some reason not relevant to this appeal a juror was withdrawn, and a mistrial resulted, but not until the justice then presiding had expressed his views as to the insufficiency of the complaint. To meet the views thus expressed the complaint was amended so as to charge that Vermilye & Co. and their counsel had been guilty of bad faith in refusing to approve the validity of the proposed guaranty, and in refusing to carry out the agreement to purchase the bonds. Counsel for the plaintiffs still protests, and insists that this amendment was unnecessary, and that, without it, the complaint states a perfectly good cause of action. This view seems also to have been entertained by the justice who presided at the trial.

Upon the voluminous record on appeal, from which has been compiled the foregoing statement of what we deem to be the salient and controlling facts, many interesting questions have been raised and exhaustively discussed by counsel. The conclusion at which we have arrived upon the main questions, to wit, the nature of the obligation

assumed by Vermilye & Co., and the sufficiency of their reasons for refusing to carry it out, will render it unnecessary to consider many of the questions thus presented and argued.

[1] There is one question, however, as to the amount for which judgment was directed which was raised by proper exception at the time, and again on the motion for a new trial, which we consider it proper to discuss because of a decision recently made by this court, permitting bondholders who had never made themselves parties to the action to come in, as parties, after judgment and then participate in the recovery. Atkins v. Trowbridge, 147 N. Y. Supp. 275, decided May 1, 1914. The papers before us on that appeal were very incomplete. They included neither the complaint nor the judgment, and we had but the statements contained in affidavits that the action was a representative one, by plaintiffs in behalf of themselves and all others similarly situated, constituting apparently a class, that a judgment had been obtained for the damages suffered by the whole class, and that the petitioners were members of that class. Their application was supported by the citation of a number of cases in equity, like Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663, which were not only representative, but derivative actions. The present full record shows that this is not a suit in equity, but one at law for damages, and our decision upon the appeal above referred to is not determinative of any question presented by this appeal. The only plaintiffs at the time of the trial were the personal representatives of three owners of securities of the old company. These owners, all of whom had died, were Thomas B. Atkins, Uriah Herrmann, and Benjamin E. Bates. At the trial the court left to the jury to say what loss per bond was suffered by the owners of each class of bonds, and then directed a judgment in favor of plaintiffs, not for the loss suffered with respect of the bonds held by those whom they directly represented, but for the aggregate loss to all the holders of all the bonds of the old road, whether their owners were, at the time of trial, parties to the action or not. In this way a verdict was directed for $221,390, although the total loss resulting to those whom the plaintiffs directly represented was no more than $18,-149. After judgment had been entered upon this verdict, a number of persons who had held bonds in the old road, but who had never theretofore taken steps to become parties to the action, applied to be added as plaintiffs, and by our decision above referred to were so added.

There has been much discussion at bar and on the briefs whether this case should not have been tried as a suit in equity. Plaintiffs have insisted throughout that it is an action at law, and it was brought on for trial on the law side of the court. To bring about the result for which plaintiffs contended, to wit, that all the damages suffered by all the bondholders should be recovered in this action, it became necessary to enter a judgment such as could only be appropriately entered in a suit in equity, including the appointment of a referee to ascertain to whom the damages should be paid, and also the provision familiar in equitable judgments, but hitherto unknown in a judgment at law, that any party might apply, at the foot of the decree for further relief. It is perhaps not important to discuss the question whether this cause

should be considered as having been brought at law or in equity. The mode of trial is not important, especially as substantially nothing was left to be decided by the jury except the question of damages. The important question lies deeper than that, and is whether the court was authorized to award damages except such as had been suffered by those who were parties to the action at the time of trial. The only theory upon which a recovery could be had at the suit of individual bondholders was that each bondholder who subscribed to the reorganization agreement had created the reorganization committee his agent to do certain things, including the making of a contract for the underwriting of the proposed bond issue, and that Vermilye & Co. in contracting with the committee, knowing it to be the agent of the bondholders, had in effect contracted with each bondholder that it would purchase his bonds, and thus make possible the reorganization, which was to impart a value to his securities. Hence each assenting bondholder has a personal cause of action, if any had, for his damages resulting from the failure of Vermilye & Co. to perform its agreement with him. The assenting bondholders were very numerous, and the question of the liability of Vermilye & Co. for damages was one of general interest to all of them. The case was therefore brought within that provision of section 448, Code of Civil Procedure, reading as follows:

"And where the question is one of a common or general interest of many persons; or where the persons, who might be made parties, are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

While this section would seem to justify plaintiffs in bringing this action in their own behalf and in behalf of others similarly situated, it does not determine the nature of the judgment which should have been entered, nor who is entitled to participate in its results.

[2] Representative actions in which one sues for the benefit of all are very common. Those with which we are most familiar are not only representative, but derivative in the sense that the plaintiff sues not in his own right, but in the right of another. Such are actions by a stockholder in the right of the corporation, or of a creditor in the right of a receiver. The object of all such actions is to realize a fund to be paid, not directly to the plaintiff, but to the corporation, or receiver or other person in whose right the plaintiff sues, thence to be distributed among those entitled to share in it. In such a case it is of no importance whether or not all the persons ultimately entitled to share in the fund are made plaintiffs or not. This, however, is not such a case. It is not a derivative action, because each plaintiff sues in his own right, and not in the right of another. There is no fund to be realized, because the liability of Vermilye & Co., for damages, if any, was not to the assenting bondholders collectively, but was a several liability to each bondholder. In such a case, whether the action be deemed to be one in law or equity, while it may be permissible for one or more to sue in the first instance in behalf of all similarly situated, we are of opinion that judgment can properly be rendered only in favor of those who originally sued, or of those who after the commencement of the action and before judgment have caused themselves to be

joined as plaintiffs. Knell v. City of Buffalo, 54 Hun, 80, 7 N. Y. Supp. 233. Within what time and under what conditions one not originally a plaintiff may be permitted to become a party depends upon the circumstances existing when the application is made. MacArdell v. Olcott, 62 App. Div. 127, 70 N. Y. Supp. 930. We are therefore of the opinion that it was erroneous to direct a verdict for any greater sum than the damages shown to have been suffered by those who were, at the time of the trial, parties plaintiff.

[3, 4] It remains to be considered whether any judgment at all should have been rendered against the defendants. As has already been stated Vermilye & Co. attached as a condition to their agreement to purchase the bonds that "all questions as to the legality  *  *  *  of the lease and guaranty" were to be submitted to their counsel and approved by him. Such conditions are common in executory agreements for the purchase of securities or real estate, and it has invariably been held that the purchaser will not be required to complete the contract in the face of the refusal of the stipulated arbitrator to give the approval provided for. Flanagan v. Fox, 6 Misc. Rep. 132, 26 N. Y. Supp. 48, affirmed on opinion below 144 N. Y. 706, 39 N. E. 857; Wilhelm v. Wood, 151 App. Div. 42, 135 N. Y. Supp. 930; Beinhauer v. Morris, 142 App. Div. 398, 126 N. Y. Supp. 511. The plaintiffs take great comfort from the recent case of Eastman v. Horne, 205 N. Y. 486, 98 N. E. 758. That case, however, is easily distinguishable from this. The condition there was that:

"The vendor shall give and the vendee shall accept a title such as the Title Guarantee & Trust Company will approve and insure."

Concerning the effect of the condition the court said:

"Doubtless, under the contract, the Title Company was made the arbitrator on any question of the marketability of the title, and if it declined to approve it, that would end all difference between the parties, and the vendor would be in default."

To that extent the case followed and approved the earlier cases above cited. The case turned, however, upon the question as to whose duty it was to submit the title to the Title Company for approval, and it was held that that duty had not been placed upon the vendor, but that if the vendee wished the assurance of title from the Title Company, he must apply for it, and that if he neglected to so apply, and for that reason neither approval nor disapproval was forthcoming from the Title Company, the vendee could not fall back upon the lack of the approval by the Title Company as a failure of the condition, but must accept the title if, in fact, it was found to be good. No such question is presented in the case at bar. Vermilye & Co. refused to complete the purchase, not because Mr. Nash had not passed upon the validity of the proposed guaranty, but because he had passed upon it and had refused to approve it, and there is no lack of evidence that his opinion had been most strenuously sought, and that it was only after careful consideration that he had refused to give the approval stipulated for in the contract of purchase. An attempt is made by plaintiffs to make it appear that Mr. Nash had once given a verbal approval of the liability of the proposed guaranty, and that this satisfied the condition in the

agreement for the purchase of the bonds. The evidence upon which this contention is based is to the effect that the counsel for the reorganization committee submitted, very informally, to Mr. Nash a rough sketch of the proposed plan of reorganization, including a provision for the guaranty of the new bonds, and that Mr. Nash gave his approval to the plan as thus sketched; but, as counsel asked the court to charge (and it was erroneous to refuse), Mr. Nash's approval of the general plan of action was in no sense an approval of the legality of the leases or guaranties, and it is perfectly apparent from the subsequent actions, both of Mr. Nash and of the counsel for the reorganization committee, that neither understood at the time that Mr. Nash had approved the legality of the lease and guaranties. We find, therefore, upon the undisputed evidence, that the conditions upon which Vermilye & Co. agreed to purchase the bonds, to wit, that the legality of the proposed lease and guaranty should be approved by their counsel, was never fulfilled, and consequently that no obligation rested upon that firm to complete the purchase. If we are right in this it follows that no claim for damages can be predicated upon their refusal. In our view of the case it is immaterial whether or not the proposed lease and guaranty would have been valid, and we do not therefore discuss that question further than to say that we consider that their validity was so doubtful, as matter of law, as to have justified Mr. Nash's unwillingness to approve them. There are serious difficulties, also, with the measure of damages adopted by the court, and the evidence admitted on that subject. In the view we take of the case, however, it will be unnecessary to prolong this opinion by a discussion of that matter.

[5] But one question remains for consideration. As has been said, the complaint was so amended in the course of the litigation as to incorporate an allegation of bad faith on the part of defendants and their counsel. The court, apparently with reluctance, because it did not consider that the question of good or bad faith was relevant, finally submitted to the jury this question:

"Was the conduct of Vermilye & Co. and their counsel subsequent to July 10, 1893, as to the guaranty, in bad faith, and a pretext to avoid performance of the contract by Vermilye & Co.?"

To this the jury replied:

"Yes, providing that the words 'bad faith' imply the breaking of their word"

—and the answer was allowed to remain in that form. Of course this was not a finding of bad faith in the sense that the charge was made in the complaint, and the answer to the question determined nothing. In point of fact there was no evidence in the case that would have justified a finding that either Vermilye & Co or their counsel had been guilty of fraud or bad faith, or that Mr. Nash's refusal to approve the legality of the proposed lease and guaranty resulted from anything else than as honest doubt which it was his duty to communicate to his clients. A verdict or finding to the contrary would have been without evidence to sustain it.

Upon the undisputed facts, therefore, as we understand the law applicable to the case, the judgment was against the facts and the law,

and the defendants' motion for a dismissal at the close of the whole case should have been granted. There would seem to be no good purpose to be served by ordering a new trial, for there is no reason to suppose that upon such a trial any new evidence could be adduced which would justify a judgment in plaintiffs' favor.

The judgment and order appealed from will therefore be reversed, and the complaint dismissed, with costs to the appellants in all courts. All concur.