OPINION OF THE COURT
Beverly S. Cohen, J.
The Religious Corporations Law provides that a religious corporation may not sell any real property without leave of the court, such leave to be sought pursuant to section 511 of the Not-For-Profit Corporation Law. (Religious Corporations Law, § 12.)
Pursuant to these statutes, petitioner submitted to this court an application for approval of a contract to sell a building located at 15 East 96th Street, to one Barry Trupin, for $2,000,000. Subsequently, the petition was amended to reflect the commitment of Mr. Trupin to pay an additional sum of $200,000 if the transfer of title takes place on or before September 1, 1981. In connection with this contract a brokerage commission of $120,000 is payable by the seller on closing of title.
The Not-For-Profit Corporation Law requires the court to determine whether the “consideration and the terms of *512 the transaction are fair and reasonable to the corporation and that the purposes of the corporation or the interests of the members will be promoted [by the sale]” (Not-For-Profit Corporation Law, § 511, subd [dj).
In an effort to make the court aware of all pertinent information concerning the property, the church included in its petition a list of other offers for the property received by it this year, as well as an appraisal report it had procured. Shortly after submission of this petition, Trupin commenced an action for specific performance of the subject contract. In connection with that action a different appraisal was submitted. In view of the conflicting appraisals and the possibility of higher offers, this court conducted a hearing. (Matter of Congregation B’Nai Abraham of East Flatbush v Rosoff, 73 AD2d 646.) At the hearing, evidence was offered by the church, by Barry Trupin and by Mark Hertzan, a potential buyer interested in opposing the petition. (Not-For-Profit Corporation Law, § 511, subd [b].)
The Not-For-Profit Corporation Law sets forth two issues to be considered by the court: (1) The fairness and reasonableness of the terms of the transaction and (2) whether the sale would benefit the petitioner or promote the interests of its members. (Not-For-Profit Corporation Law, § 511, subd [d].) In making its determination the court is to determine the first issue, as of the time of the making of the contract, and the second, as of the time of the consideration of the approval of the contract. (Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn, 76 AD2d 712, 718, affd 54 NY2d 742.)
It is urged by Hertzan that the purchase price of the contract be evaluated in light of conditions prevailing at the time of consideration of the petition rather than as of the making of the contract. For practical business reasons such a standard should not be applied. To do so would introduce so serious an element of uncertainty into real estate transactions entered into by churches, as to destroy their negotiating power. Futhermore, to disapprove a contract on the basis of conditions prevailing at the time the petition is before the court would result in turning the church out of court to face the uncertainties of the market. *513 Bereft of the contract it had, without the certainty of a contract hoped-to-be-better, the church would be subject to a decline in the market which would result in the evaporation of all “better” offers. That in any particular period there was a rising market can only be said in retrospect.
For these reasons the court looks to the market value on the contract date to determine whether the terms of the contract are fair and reasonable. If the contract meets the test of “fair and reasonable at the time it was made” then its confirmation will guarantee to church transactions security and reliability which will give the church the benefit of a firm contract.
At the hearing evidence of fair market value was offered by the church, Trupin and Hertzan. This evidence consisted of appraisals by Mr. Kerler for the church, by Mr. Van Anken for Trupin, offers to buy the property and the contract between Mr. Trupin and the church.
The appraisal report by Mr. Kerler consisted of his description of the property which he inspected on March 18,1981, newspaper reports of real estate conditions, a list from the church of offers received for the property.
In his report Mr. Kerler rejected the use of comparable sales to determine fair market value, reasoning that there were no buildings comparable to the subject premises, he rejected capitalization of income as a basis for appraisal because the property was intended for use as a one-family dwelling. He unabashedly states: “Therefore this appraisal is based upon the best offer thus far received.” The hazards of using this method will appear when “the best offer thus far received” and others are analyzed below. Mr. Kerler set the value of the property as of April 6, 1981 at $2,341,250, based on an offer by one Frederick Mueller.
Based on his testimony, it appears that Mr. Kerler’s report was tailored to the church’s requirements, as he perceived them, rather than being an independent appraisal. Mr. Kerler’s report does not shed any light on the question of fair market value.
The second appraiser, Mr. Van Anken, testified that he considered the market data approach most appropriate for appraising single-family homes. Based on comparison of *514 data on sales in the area of the east side of Manhattan in the corridor of Madison to Fifth Avenues; computation of square footage prices; adjustments for limitation of use and obligation to return to the seller a share of any profits on a resale within three years; adjustment for outstanding features of the building, Mr. Van Anken evaluated .the premises at $1,800,000 in January, 1981 and as of June 11, 1981, the date of the report, at $2,100,000. Mr. Van Anken’s testimony, report and his opinion are evidence of the market value of the premises.
Testimony of Mr. Mueller’s attorney as to the offer purportedly made by Mr. Mueller for the purchase of the property was offered. This testimony was excluded. We are enjoined by Hine v Manhattan Ry. Co. (132 NY 477) to exclude hearsay testimony regarding offers made by another. “[T]he evidence adduced in this case is objectionable, because it places before the court or jury an absent person’s declaration or opinion as to value, while depriving the adverse party of the benefit of cross-examination.” (Hiñe v Manhattan Ry. Co., supra, p 480.)
Hine further cautions with respect to testimony as to offers even when there is testimony by the offeror. Mark Hertzan testified as to his offers to purchase the property. His offers were $1,000,000 in November, 1980, $2,200,000 on February 3,1981 and $2,300,000 on July 23,1981. Both Hertzan and Ronald Stone testified about their joint plans to convert the building to a multiple dwelling. It is significant that Mr. Stone testified that he was unaware of the clause in the Trupin contract, one which petitioner’s attorney testified was part of every contract for sale of real property by the church. This clause provided that any profit on resale of the premises within 3 to 5 years must be shared equally with the church.
Such ignorance casts a doubt as to the seriousness of the offer or the extent of the negotiations resulting in the offer. The Hertzan group was most interested in maximizing profits. It is questionable whether the offer would remain at the same high level, subject to the recapture-of-profits clause, as it had attained absent knowledge of that clause.
Further question as to the nature of this offer arises when it is noted that the ratification of the contract by the *515 Archbishop took place on May 13, 1981, well after presentation of Mr. Hertzan’s increased offer of February 3. The Hertzan offer is not evidence of the market value of the property.
It does not appear, even by hearsay testimony, that there was an offer anywhere near Trupin’s $2,000,000 offer until that offer was made on November 8, 1980. The only offer noted before that time was Mr. Hertzan’s offer of $1,000,000. This suggests that it was Trupin’s bid, well over the previous bid, which set the market price. (See Matter of Young Israel of Bedford Park, NYLJ, July 14, 1953, p 18, col 2.)
The contract of February 22, 1981 between Trupin and the Church of St. Francis de Sales was entered into evidence and is itself some evidence of market value on the contract date. (Plaza Hotel Assoc. v Wellington Assoc., 37 NY2d 273, 277.)
Fixing a market válue for real property is a different matter from determining the market value of standardized items sold regularly and in large numbers. As Chief Justice Holmes of the Massachusetts Supreme Judicial Court pointed out with reference to evaluation of old furniture: “In a case like this market value is a criterion which oscillates within limits, because, in the absence of a balance wheel like the stock exchange, it cannot be assumed with regard to a single object and a single sale that the element of accident is eliminated, and that the most favorable purchaser will be encountered.” (Bradley v Hooker, 175 Mass 142, 143.)
Based on all the evidence the court finds that the fair market value of the premises on February 22,1981, was in the area of $2,000,000. The amended contract price of $2,200,000 would net to the church $2,080,000 after payment of the brokerage fee, if the closing is held on or before September 1, 1981. Thus, the Trupin price is within the range of fair market value.
In determining whether a transaction is fair and reasonable to the petitioner, the court must concern itself with other facts in addition to the fair market value of the property. (See Matter of St. Luke’s Hosp., 33 Misc 2d 888.)
*516 Bearing in mind that the purpose of the statute is to protect the church and its members, the court looks to all the circumstances of the sale which may affect petitioner. (Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn, 76 AD2d 712, supra.) It appears to the satisfaction of this court that the transaction was entered into in good faith by both parties after proper exposure of the property to prospective buyers. (Matter of Congregation of B’Nai Abraham of East Flatbush v Rosoff, NYLJ, March 31, 1980, p 13, col 3.) The church had decided to sell the property some time well before January, 1981 because it was underutilized, and testimony established that many brokers were aware of the offering and, indeed, the property was shown to many prospective purchasers. Furthermore, the court is mindful that a lis pendens has been filed against the property in connection with Trupin’s action for specific performance. This action, based as it is in part, on a claim that section 12 of the Religious "Corporations Law is unconstitutional, would survive a determination, if made, that the terms of the transaction were not fair and reasonable to the church. Thus, conveyance of the property by the church would be hampered.
If this sale were not approved the church would perforce lose the benefit of receiving the proceeds of the sale immediately. The court recognizes the current high level of interest rates which makes delay in receipt of money costly in itself.
The attorneys for Trupin and the church have agreed that after transfer of title on September 1,1981, possession by Trupin will be delayed to September 30 to allow time for relocating the present occupants.
The petition as amended to include the increased offer of Barry Trupin meets the standards of the applicable law. The objections of Mark Hertzan and the members of the parish council of the Church of St. Francis de Sales to the petition are without merit.
Accordingly, the petition, as amended, is approved. Petitioner is directed to arrange for transfer of title on or before *517 September 1,1981. The proceeds of the sale shall be used in the manner proposed by petitioner.