OPINION OF THE COURT
Charles A. Kuffner, Jr., J.
Before the court are two separate proceedings. Plaintiff commenced the first action (index No. 2635/85) seeking an injunction barring the sale of certain real property to a third party, specific performance of a contract and damages for breach.
In a separate action (index No. SP671/85) plaintiff moves for an evidentiary hearing under Not-For-Profit Corporation Law § 511 (b) on the application for leave to sell real property by defendant pursuant to Religious Corporations Law § 12, Not-For-Profit Corporation Law § 511 and certain contract provisions. For purposes of this decision the two matters have been consolidated. The facts are as follows:
In June of 1984 St. Rita’s Church offered for sale a single lot of 78,000 square feet of undeveloped land on Staten Island. According to appraisers hired by both parties the highest and best use of this tract would be residential, one- and two-family homes. On April 18, 1985, the church entered into contract with Morton Wolkoff for the sale of the land. The price was fixed at $463,500 which represents about $6 per square foot. Page 1 of the contract expressly conditions the sale on the approval of a Supreme Court Justice. This clause also stipulates that if permission is denied, seller’s liability will be limited to the return of purchaser’s down payment. Purchaser would have no other remedies as against the seller.
On June 24, 1985, St. Rita’s Church petitioned this court for leave to sell the property pursuant to Religious Corporations Law § 12 and Not-For-Profit Corporation Law § 511 (a). The court appointed an independent appraiser to examine the property. The appraiser determined that the fair market value of the property in question as of November 5, 1985 was $772,500, approximately $10 per square foot. This represents an 80% increase in the market value of the property over the contract price. The court held that the contract price was inadequate consideration and issued an interim order denying the petition to sell. (Special Term, Part II, index No. SP671/85 [Dec. 6, 1985].) Plaintiff subsequently moved for a "rehearing” pursuant to Not-For-Profit Corporation Law § 511 (b).
*466 Plaintiff in its action against St. Rita’s seeks an injunction barring sale of the property to a party other than itself, specific performance and other damages. Plaintiff contends that the application of Religious Corporations Law § 12 and Not-For-Profit Corporation Law § 511 resulted in a taking of plaintiff’s property without due process of law. The basis for the claim of unconstitutionality is that the application was heard without plaintiff having the ability to participate in the proceeding and to submit any testimony or evidence in support of the sale. As a result, plaintiff claims he has been summarily denied his right to participate in a special proceeding affecting his contract rights which is tantamount to a taking of property without due process of law. Plaintiff seeks to be heard by the court, at which time he contends he will be able to produce evidence and witnesses who will testify that the consideration was adequate at the time the sale was negotiated and the bargain was struck which was September 1984.
Defendant, St. Rita’s, cross-moved to dismiss the complaint under CPLR 3211 (a) (7) and for an order denying the application of plaintiff, under Not-For-Profit Corporation Law § 511, for a rehearing on January 17, 1986.
Religious Corporations Law § 12 (1) requires that: "A religious corporation shall not sell, mortgage or lease for a term exceeding five years any of its real property without applying for and obtaining leave of the court therefor pursuant to section five hundred eleven of the not-for-profit corporation law”.
Not-For-Profit Corporation Law § 511 (a) requires that: "A corporation required by law to obtain leave of court to sell, lease, exchange or otherwise dispose of all or substantially all its assets, shall present a verified petition to the supreme court of the judicial district”.
Pursuant to these statutes plaintiff included in the contract of sale a provision stipulating that the validity of the contract was subject to judicial approval. This provision does not differ from a contract made subject to "attorney approval”. In Youla v Rappaport (115 NYS2d 408 [Sup Ct, Kings County 1949]), the court held that under a provision in a contract making it subject to rejection by vendor’s attorney in three days, attorney could reject the contract for any reason. Similarly, in Atkins v Trowbridge (162 App Div 629, 637 [1st Dept 1914]), the court stated that a party will not be required to complete *467 the contract in the face of the refusal of the stipulated arbitrator to give the approval provided for. (See also, Guadagno v Greenfield, NYLJ, May 17, 1985, p 15, col 5 [Sup Ct, Richmond County].)
The contract between St. Rita’s and Mr. Wolkoff was specifically made subject to approval of a Supreme Court Justice. Notwithstanding that this clause was required by statute, under the law of this State, the stipulated arbitrator has the discretion to approve or deny the agreement. (See, Atkins v Trowbridge, supra; Youla v Rappoport, supra.) Although this is dispositive to decide this matter, the court feels constrained to further analyze the issues before it.
Plaintiff additionally seeks a rehearing before the court in order to present evidence which would persuade the court to reverse its earlier decision and approve the sale. It is the plaintiff’s contention that Religious Corporations Law § 12 and Not-For-Profit Corporation Law § 511 do not adequately afford the plaintiff an opportunity to defend its bargain. A review of Religious Corporations Law may be helpful in understanding the court’s role.
New York Religious Corporations Law § 12 (1) requires that in order for a religious corporation to sell or mortgage any of its real property, it must first obtain the permission of a court. This policy was well established in England by the time colonists first came to this country bringing certain provisions of English law with them. Generally, the requirement of court approval is to protect the clergy and the parishioners from business deals not in their best interests. But it is more than that, it is a protection by the courts of society in general, with the courts assuming the role of "parens patriae”, acting as guardians for the welfare of the people collectively.
During its seventh session in April of 1784, the New York State Legislature passed an act which enabled all religious denominations in the State to appoint trustees who shall "be a body corporate, for the purpose of taking care of the temporalities of their respective congregations, and for other purposes therein mentioned” (L 1784, ch 18). This enabling act manifests, quite clearly, an intent to place in the hands of the trustees of the church the power to protect the church in an action at law for misuse of church property. The Legislature stated that "many estates purchased and given for the support of religious societies now vest in private hands, to the great insecurity of the society, for whose benefit they were pur *468 chased or given, and to the no less disquiet of many of the good people of this State”. In order to prevent the future misuse of church property, the Legislature stated in the act that the "trustees * * * shall be able and capable in the law, to hold, maintain and recover all their estates, rights and privileges * * * and to sue * * * in any court or courts of common law or equity whatsoever”. The intention of the Legislature, no doubt, was to authorize the church trustees to be the guardians of the church instead of having the clergy be solely responsible for the administration of the properties.
The Legislature went one step further in this enabling act. The act provides that once in every three years there is to be an accounting of church property, both real and personal, before the Chancellor, Supreme Court Justices or the Judges of the Court of Common Pleas. If an accounting was not made before a fourth year, the corporation would be dissolved. This then was the origin of the Religious Corporations Law in the State of New York. It created a series of powers and restrictions on both the church and the public. The main thrust is that a church may incorporate to protect its properties, trustees are to be appointed to manage the temporal affairs with powers to bring an action on the church’s behalf and the courts were to audit and oversee the affairs of a religious corporation in order to protect the interests of society for whose benefit the religious societies were created.
Although the Legislature was clear in its intent in passing the 1784 act, it believed that one aspect of the management of the church’s property needed further restriction. In 1806 it passed an amendment to the "incorporation” act. The amendment provided that "it shall be lawful for the chancellor of this state, upon the application of any religious corporation, in case he shall deem it proper, to make an order for the sale of any real estate belonging to such corporation” (L 1806, ch 43). This amendment has two possible interpretations. First, in order to further protect the church from poor financial management, only with court approval would the church be allowed to sell its real property. Secondly, a church in debt would not be susceptible to the usual form of summons and complaint and therefore at times it became necessary for the State to become involved so that a religious corporation’s debt may be satisfied. There is an absence of commentary or case law respecting which of the two interpretations led the Legislature to promulgate this amendment, but it is the source of *469 the restriction on alienation of religious property that developed in New York.
One commentator has suggested that the trustee-corporation theory that was created by the 1784 act cast a doubt over the title conveyed by the corporation. (Zollmann, American Civil Church Law, at 96 [1917].) This led many churches to petition the Legislature for leave to sell so that they may convey a clear title. This in turn prompted the Legislature to unburden itself of these duties by enacting the 1806 amendment which delegated the duty of approving the sale of church property to the Chancellor. When the religious incorporation act was reenacted in 1813, the courts were committed by the Legislature to examining the proposed sales of religious corporation property.
During the 19th century the courts began to define the scope of their power over religious property. In a series of cases, judicial approval was extended to include a mortgage as well as a sale. (Dudley v Congregation of Third Order of St. Francis, 138 NY 451, 456 [1883]; Manning v Moscow Presbyt. Socy., 27 Barb 52 [1858]; Matter of St. Ann’s Church, 23 How Prac 285 [1862]; Moore v Rector of St. Thomas, 4 Abb NC 51 [1873].) Similarly, the court has been able to protect the church’s property by preventing a transfer of assets to a similar corporation (Wheaton v Gates, 18 NY 395 [1858]), denying approval where a majority of the congregation was against it (Wyatt v Benson, 23 Barb 327 [1857]; Matter of Brick Presbyt. Church, 3 Edw Ch 155 [1837]; Madison Ave. Baptist Church v Baptist Church in Oliver St., 46 NY 131 [1871]), and generally providing a check for improvident transactions. (Matter of Dutch Reformed Church in Saugerties, 16 Barb 237 [1853]; Congregation Beth Elohim v Central Presbyt. Church, 10 Abb Prac [NS] 484 [1871].)
The judicial approval did not extend, however, to purchase-money mortgages (South Baptist Socy. v Clapp, 18 Barb 35 [1853]), an agreement or contract to sell (Congregation Beth Elohim v Central Presbyt. Church, supra), or being an intermediate for two contracting parties (Wheaton v Gates, supra).
Additionally, a rescission of the contract and a return of consideration may be ordered by the court. (Associate Presbyt. Congregation v Hanna, 113 App Div 12 [3d Dept 1906]; Wilson v Ebenezer Baptist Church, 17 Misc 2d 607 [Kings County 1959].) The realty of a religious corporation could be sold to satisfy a judgment against the corporation. (Rector of Church of Nativity v Fleming, 285 NY 706 [1941].)
*470 Of great significance, however, is the court’s view of what the church’s legal position is. "[The] religious corporation [is] one of a class of litigants that the Legislature has determined to be entitled to special safeguards * * * similar to those granted certain individuals such as infants, incompetents and others under disability.” (Berlin v New Hope Holiness Church of God, 93 AD2d 798, 799 [2d Dept 1983] [Rubin, J., dissenting]; see also, Russian Church of Our Lady of Kazan v Dunkel, 67 Misc 2d 1032 [Nassau County 1971], affd 41 AD2d 746 [2d Dept 1973], affd 33 NY2d 456 [1974].)
More recently, the Court of Appeals has reaffirmed its commitment to the protection of the religious societies. Starting with Muck v Hitchcock (212 NY 283 [1914]), the Court of Appeals has consistently viewed their position as the "parens patriae” of the religious societies in relation to the sale of property. In Muck, the court stated "[t]he object of the state in requiring a religious corporation to obtain leave of the court before conveying its real property, is to protect the society and its members from loss through unwise bargains, and to prevent perversion of the association’s property” (supra, at p 287; see, Matter of Barusek [Beth Jacob School], 1 Misc 2d 950 [Bronx County 1956], sanction of the court is necessary for protection of religious purposes of corporation; Bernstein v Friedlander, 58 Misc 2d 492 [Kings County 1968], leave of court is to prevent dissipation of corporate assets).
Lately the courts have struggled to deal with the mechanics of the sale rather than the legislative and statutory authority by which they are authorized to inquire into the contracts. In Church of God of Prospect Plaza v Fourth Church of Christ, Scientist (76 AD2d 712 [2d Dept 1980]), the court stated that corporate minutes of the defendant church constituted adequate proof that the congregation had accepted the plaintiff’s offer. The court also discussed the contract’s strength prior to court approval. "[W]e do not wish to be understood as holding that a religious society may, at its whim, change its mind as to the sale of its real property after it has entered into a contract of sale but before the requisite court approval has been obtained” (supra, at p 718).
In determining the validity of a contract for sale of religious property, the court, in Church of God of Prospect Plaza (supra), promulgated a two-tier analysis of the proposed sale. This analysis was adopted by the court in Matter of Church of St. Francis De Sales (110 Misc 2d 511, 512 [Sup Ct 1981]), where the court stated that consideration must be given to (1) *471 the fairness and reasonableness of the terms of the transaction, as of the "time of the making of the contract”, and (2) whether the sale is in the best interest of the congregation at the time approval of the contract is considered. The critical variable of the contract for the court was timing. The time the contract was entered into was the moment for calculating fair market value. If approval was sought a year later and there was a rise in market value, the contract could not be defeated because the sale price was below market value. The second tier of the formula would allow the court broad discretion in analyzing the terms of the contract and whether it is in the best interest of the religious society. This is determined at the time of application for approval and would allow the court to deny the application if it would not benefit the religious society. Under certain circumstances, there may be protection for the purchaser. Where a religious corporation breaches a contract before receiving court approval, a purchaser may be entitled to recover reliance damages expended by him in performance of the contract. (Wilson v Ebenezer Baptist Church, supra.)
Each court will decide on a case-by-case basis whether the contract is in the best interests of the church. Recently, in Matter of East Meadow Jewish Center (NYLJ, May 6, 1986, p 13, col 3 [Sup Ct, Nassau County]), a religious corporation sought leave to sell a home it owned to its Rabbi emeritus. The court stated that the sale was being made to a man who had served the congregation for over 30 years and will remain in the community to further benefit the congregation. Therefore, other factors may be considered in determining whether the sale is fair and promotes the best interest of the corporation. Accordingly, market value will not be dispositive.
Absent any special circumstances, however, the current market value is the most reliable index for calculation of what constitutes a fair consideration for real property.
Plaintiff contends that the market value, as determined by appraisal, should be the value of the property on the date the bargain was struck between the agents for the buyer and the seller in the instant matter. This date is fixed by the plaintiff as September 1984. While the court agrees that the value of property is set at the date when the bargain is struck, this date is the date of contract and not the date of prior negotiation as plaintiff argues. (See, Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, supra; Matter of Church of St. Francis De Sales, supra.) Authority to contract or bind *472 the seller was not issued or exercised on behalf of any agent or other party prior to April 18, 1985. Written authority must be obtained as a prerequisite to satisfying General Obligations Law § 5-703 (2) when contracting to convey a property for a period of time exceeding one year. The September 1984 letter from a broker to the plaintiff was not authorized in writing by the seller and is, therefore, not binding. Additionally, paragraph 22 of the April 18, 1985 contract states: "All prior understandings and agreements between seller and purchaser are merged in this contract * * * It has been entered into after full investigation, neither party relying upon any statements made by anyone else that are not set forth in this contract”.
Accordingly, the proper date for determining the market value of the property is the contract date. This was April 18, 1985. Plaintiff argues that he did not have an opportunity to cross-examine the court-appointed appraiser or to marshal other evidence. That as an interested party who has a property right by contract, plaintiff should have been notified of the Not-For-Profit Corporation Law § 511 hearing and given an opportunity to present its evidence in support of the contract. To bolster his claim that he is entitled to a rehearing on the issues of adequate consideration, plaintiff also relies on Matter of Congregation B’Nai Abraham of E. Flatbush (Rosoff) (73 AD2d 646 [2d Dept 1979]), which states that conflicting appraisals mandate an evidentiary hearing.
First, Not-For-Profit Corporation Law § 511 (b) permits only an interested person to appear at the hearing and "show cause why the application should not be granted”. Plaintiff would argue that the application should be granted which is diametric to what is authorized by the statute. Secondly, plaintiff seeks a rehearing which is not provided for by statute at all.
Plaintiff’s contention that conflicting appraisals mandate an evidentiary hearing is also not dispositive in this matter. In Congregation B’Nai Abraham (supra), there were two appraisals of the property and neither were considered to properly deal with the question of valuation and current market value. Therefore, the court ordered an evidentiary hearing to resolve the issue. In the matter before this court, this is not the case. There have been four appraisals done of the property. Three appraisals, including two completed on behalf of the plaintiff, calculated the value of the property at between $650,000 and $750,000 at the time of contract. Only one appraisal, com *473 pleted by a cobroker, calculates the value of the property at the time of contract as $460,000. On this matter, there is a general consensus among the appraisers that the property is worth in excess of the contract price. Therefore, there is no conflict as to valuation for an evidentiary hearing to resolve. Additionally, the three concurring appraisers’ methodologies were similar as their valuations were based primarily on comparable sales which is a proven measure of market value while the fourth appraiser, the cobroker, did not produce either comparable sales or a similarly reliable basis for his valuation.
Consequently, plaintiffs due process argument fails for several reasons: (1) plaintiff was not entitled to notification of the hearing as he was not a properly interested party under the statute; (2) "due process” is not violated by a statute when, as here, there is a reasonable basis for the legislation (West Coast Hotel Co. v Parrish, 300 US 379, 391 [1937]); (3) neither Religious Corporations Law § 12 nor Not-For-Profit Corporation Law § 511 destroys plaintiffs contractual rights in this matter as the contract was conditioned upon the approval of a Supreme Court Justice who was a stipulated arbitrator; and finally (4) plaintiff would not be able to muster any additional evidence in an evidentiary hearing which the court has not already scrutinized in relation to plaintiffs plenary action against the defendant and in its application for rehearing. Thus, the court has not arbitrarily withheld its approval and plaintiff has had a meaningful opportunity to be heard and due process is satisfied.
Therefore, plaintiffs motion for a rehearing is denied as the contract price of $463,500 is insufficient consideration and a rehearing would not afford the court an opportunity to review evidence or testimony which it has not already considered. Similarly, plaintiffs complaint is dismissed as the purchase price is insufficient and under the authority of Religious Corporations Law § 12 and Not-For-Profit Corporation Law § 511 the application for sale was properly denied as it was not in the best interest of the religious corporation involved.
The hard work, thorough research and scholarship of Edward Larsen, New York Law School intern participating in the Richmond County Bar Association Summer Intern Program, is gratefully acknowledged and in large measure credited in the formation of this opinion. Mr. Larsen has the sincere thanks of this court.
*474 Accordingly, under index No. 2635/85 the defendant’s motion is granted. The lis pendens is vacated. Settle order and judgment, with costs.
Under SP671/85 the motion is denied, with $40 costs (CPLR 8202).