In the Matter of Application of KENSICO CEMETERY.

Supreme Court, Special Term, Westchester County, October 4, 1948.

*Henry R. Barrett, Jr.,* for application.

*Nathaniel L. Goldstein, Attorney-General (Theodore D. Ostrow* and *Jerome O. Glucksman* of counsel), opposed.

FLANNERY, J. By a petition dated August 18, 1948, the Kensico Cemetery of Valhalla, New York, a domestic membership corporation, applies under section 21 of the Membership Corporations Law and article 5 (§§ 50–52) of the General Corporation Law, for permission to sell some of its undeveloped and unused land to the Hillbrook Cemetery, Inc., a membership corporation, organized pursuant to article II of the Membership Corporations Law. One lot owner, who was also a holder of a certificate of indebtedness, informally declared his desire to appear and object but, after investigation and examination of the corporate books and financial records, withdrew his declaration with the same informality. The Attorney-General of the State of New York appeared, objected and filed an affidavit in opposition and briefs. His objections rest both upon alleged legal incapacity of petitioner to sell its property in the circumstances and upon somewhat categoric and unqualified assertions of enormous profits to be made by an individual or individuals who have acted as organizers of the purchaser in the transaction. Petitioner argues he is not a " person interested " within the meaning of section 51 of the General Corporation Law, but the court believes that the special interest of the State in the establishment, maintenance and operation of burial grounds, and particu-

larly the limitation and regulation of the powers of corporations maintaining and operating them, renders its Attorney-General a person interested within the statute.

The petitioner is legally seized of approximately 460 acres of land at Valhalla, Westchester County, New York, of which it seeks permission to convey approximately 73.844 acres at a price of $15,000 per acre for the first 38 acres, and $17,000 per acre for the rest. A total payment of $1,179,348 is in prospect, and the contract provides that this total amount shall be paid in ten approximately equal annual installments for ten successive conveyances of approximately 7.3844 acres each between June 25, 1948, and December 1, 1957. The sale has been authorized by a unanimous resolution of the trustees (General Corporation Law, § 50, subd. 5, and Membership Corporations Law, § 21, require only two thirds), and consents in writing from over five sixths of the land-share purchase certificate holders of petitioner have been obtained, a proportion in excess of the requirements of section 87 of the Membership Corporations Law and of Kensico's agreements with original vendors.

The court finds no substance in any of the arguments attacking the legal capacity of the petitioner to convey its unused and undeveloped land. The Attorney-General cites particularly sections 81, 84 and 73 of the Membership Corporations Law and section 451 of the Real Property Law. Section 81 clearly applies only to land of the corporation of which the use has been sold and conveyed to some person, or in which burial has already been made, and to the implied easements of access, etc., appurtenant to that land. It is a relaxation of the prohibitions in section 84. Obviously, land of which the use has not already been conveyed to a lot holder has not yet been set apart for burial. It may have been purchased and held by the petitioner with the intention to devote it to burial. It may have been surveyed and mapped as provided in section 80 of the Membership Corporations Law, improved and prepared so that it could be set apart for burial purposes but, until the use thereof has actually been sold and conveyed pursuant to the provisions of section 84 of the Membership Corporations Law, it has not been set apart, and, of course, until burial has been made, it is not used for burial. Here, of course, the land petitioner desires to sell has never been set apart for burial purposes at all. The petitioner has never sold or conveyed to any person the use thereof and, of course, there have been no burials therein. In the circumstances, then, section 81 could not apply.

The only theory upon which the objector's citation of section 84 can have meaning here would necessarily include an assumption that a cemetery association is not only required by that section to sell the use of a plat to " any person " but also to retain, indefinitely, all its unused land to meet possible applications in the future. This construction would convert a mere provision against discrimination into a crippling disability to convey unused land even for cemetery purposes.

Obviously, section 73 of the Membership Corporations Law and section 451 of the Real Property Law by their very terms apply only to a purchaser corporation, not to a seller, and no reasonable interpretation of their language could include within their prohibition or regulation the conveyance for cemetery purposes, from one cemetery corporation to another, of land already, long theretofore, devoted to those purposes with the formal consent of the board of supervisors. The sections seek to limit the quantity of land that may be taken and used for those purposes in certain counties and by any one cemetery. The board of supervisors is empowered, in those counties and within the limits set by those sections for each cemetery, to consent to the taking of title to new or additional ground not theretofore devoted to those purposes with the approval of the board. Here, the facts are wholly different.

Other citations by the objector are even more irrelevant. Thus, he cites the provisions of section 79-a of the Membership Corporations Law and says it was necessary because a cemetery corporation cannot sell its excess land to another cemetery corporation for burial purposes. This is a most distorted view of the section, which contemplates a cessation of operation by a cemetery corporation and a conveyance of all its burial land, whether used or not used, to a municipal corporation which will continue to operate it as burial ground. Under it the prohibition in section 84 is disregarded, no permission need be obtained from the court for the sale, and that is why its enactment was necessary. It permits the sale of a going cemetery, only to a municipal corporation, without judicial approval and expressly dissolves the grantor by the recording of the conveyance it authorizes.

Kensico has, in the opinion of the court, a general power to dispose of its real or personal property (General Corporation Law, § 14, subd. 3). To dispose of means to convey, even gratuitously (*Elston* v. *Schilling*, 42 N. Y. 79). This power is limited in some circumstances by the Membership Corporations Law, and its exercise is regulated and subject to scrutiny of the

court by section 21 of the Membership Corporations Law and article 5 of the General Corporation Law, but nowhere is it abrogated. The various sections, pertinent or irrelevant, to which the Attorney-General refers, are limitations of the general power, or modifications of the limitations, not grants of power in themselves, however phrased. Thus, the absolute prohibition of alienation of land set apart and used for burial purposes, set out in the fourth paragraph of section 84, is relaxed by the provisions of sections 81 and 79-a in the circumstances described respectively by those sections.

As I have said, the Attorney-General also objects to the application on the merits. It seems that the present sale has been brought about by the energy, initiative and enterprise of one, Stannard, who signed the contract with the petitioner and then assigned his interest to the Hillbrook Cemetery, Inc. The objection is raised that he, and those associated with him in this transaction, have, or will make, some agreement or arrangement with the Hillbrook Cemetery, Inc., whereby ultimately they will receive about $10,000,000 worth of shares from Hillbrook although the purchase price is only $1,179,348, and this is offered as evidence that Kensico's interest will not be promoted by the sale. The expenditures that the organizers must make to prepare this land suitably for burial purposes and the long time they must wait for their return, and the uncertainty whether they will ever receive any considerable portion of what they may become entitled to receive under the agreement, is not taken into consideration by this objection at all, but it is of no moment here, for Kensico is not interested in the financial or business relations between Stannard and his associates on the one hand, and the Hillbrook Cemetery, Inc., on the other, and, on this application, the court cannot reasonably refuse permission for the sale if it appears to its satisfaction that the interests of Kensico will be promoted. This is the meaning of section 52 of the General Corporation Law and any other procedure would be an arbitrary assumption of power by the court. Accordingly, even if the court thought, as by no means clearly appears here, that the transactions and agreements between Stannard and Hillbrook were in any way reprehensible, it could not use them to deny its consent to this sale.

It is left, then, to inquire whether or not this sale will promote the interests of the Kensico Cemetery and on the papers here before the court it clearly appears that it will. Kensico is over fifty years old and in that time has conveyed to lot owners the use of only about half of the land it will still retain after it

has conveyed to Hillbrook the approximately 73 acres, which are separated from it by a public road and in absolute need of an extensive drainage system. Presumably even the half set apart for burial has many unfilled graves in it and the estimates of Kensico's trustees, officers and engineers indicate that it may be at least one hundred years before the remainder is finally set apart for burial purposes by conveyance of the use of lots or plats therein to individuals. In the last thirteen or fourteen years the costs of the operation and maintenance of the cemetery have so far exceeded its income that its capital has been depleted over $30,000 before any account is taken of depreciation on a capital investment in tools, machinery, equipment and water system of about $300,000. Kensico meets a payroll annually of over $140,000 before taxes, has a total, annual, operating expense of about $300,000 and is engaged, under a court decree, in the creation of a permanent maintenance fund for the cemetery that will require substantial contributions annually. It is and will be desperately in need of current cash income, annually, for some years, and extensive advertising and other sales stimulants have not enabled it to dispose of its lots or plats in sufficient quantity, annually, to meet the cost of maintaining the cemetery in the superlatively dignified and comforting fashion for which it has become a byword.

On the record, the price to be paid by the purchaser seems fair and, although it might be trebled or quadrupled a hundred years from now, that would be of little comfort to the present lot and plot owners if the services of the cemetery, meanwhile, deteriorated and the place became a kind of mortuary rookery. There is the further advantage in this sale that the funds will be received in annual installments over a period of ten years and, if the present exaggerated cost to the cemetery of every need and service should in some degree subside with time, the funds received in the later years will have an even greater purchasing power than at today's rates and considerably more of those funds may be devoted to the permanent maintenance fund and other ends that serve the benefit of the lot and plot owners. At the same time, Kensico surrenders title only as it is paid and, if the buyer defaults, has lost nothing more than a good bargain.

The application will be granted.