Vincent A. Lupiano, J.
Petitioner, St. Luke’s hospital, a domestic membership corporation, applies under section 21 of the Membership Corporations Law and article 5 of the General Corporation Law for permission to sell the real property described in the petition, for which a contract of sale was entered into between petitioner and Consolidated Edison Company of New York, Inc., on November 22, 1961, calling for a purchase price of $1,750,000 and brokerage commissions to be paid by petitioner, subject to the approval required of this court.
The petition reveals that a higher offer was made by Columbia University in the sum of $1,800,000, after the petitioner’s executive committee had already voted to accept the aforesaid Consolidated Edison Company offer. However, after the return of the application and at one of the hearings held, Columbia’s offer was increased to $1,825,000, and, in addition thereto, Columbia stood ready to indemnify the petitioner in the event the latter would have to pay brokerage commissions. Similarly, in a spirit of competition, Consolidated Edison went beyond the price stated in the contract of sale, annexed to the petition, and stipulated at the same hearing to pay more than it had contracted to pay, to wit, the sum of $1,825,000 plus whatever brokerage commissions for which the petitioner may have made itself responsible.
Objections to the proposed sale were made by the Cathedral Church of St. John the Divine in the City and Diocese of New *890 York, the Attorney-General of the State of New York, the Housing and Redevelopment Board of the City of New York, Remedco Corporation, and many other public spirited citizens and officials, who appeared as amici curicc. In addition, one Moise Atlas and numerous other “residents of Block No. 1864 ” were granted leave to intervene as parties.
Earlier, in the history of the negotiations involved herein, on April 26, 1961, Columbia University had offered $1,250,000 for the purchase of the subject property. Thereafter, on May 18, 1961, petitioner obtained an appraisal of the property in the amount of $1,600,000, which was partly predicated on the assumption that Columbia University was one of the logical purchasers. Relying on this appraisal, petitioner set an asking price of $1,750,000 for the property. On July 27, 1961, Consolidated Edison offered $1,750,000. This was the offer that was accepted by the petitioner’s executive committee on August 23, 1961. On August 24,1961, Columbia University offered the sum of $1,800,000, the offer referred to in the petition.
The petition alleges “in view of the executive committee’s good faith acceptance of the offer of Consolidated Edison Company of New York, Inc., the trustees of the hospital, having been informed of the above facts, voted on September 25, 1961, to accept the offer of Consolidated Edison Company of New York, subject to the approval of this court that the belated higher offer was therefore rejected, and the sale to Consolidated was later ratified and confirmed in a subsequent meeting of the hoard of trustees held on October 30, 1961; that on November 22, 1961, a contract was entered into between petitioner and Consolidated Edison, which is the contract for which approval was sought initially in the instant application.
Upon the application, three hearings were held, and, as previously noted, Columbia University at one of them increased its last offer to the sum of $1,825,000 and Consolidated Edison increased the contract price in the manner already mentioned.
However, at the last hearing held by the court on March 15, 1962, Columbia University withdrew its offer and objections to the proposed sale to Consolidated Edison, for reasons not germane herein, so that now the sole and remaining offer is the one from Consolidated Edison. Moreover, on the basis of subsequent developments, culminating in the higher and sole offer and the best obtainable price, the Attorney-General of the State of New York changed his position and withdrew his objections; the other intervening parties have likewise withdrawn their objections.
*891 The remaining objections by the amici curia generally lie in one direction — that the property can be better used as a middle-income housing development and in that respect would further community needs. Such adherents ask the court to defer approval here so that a projected urban renewal plan would have opportunity to take effect upon a contemplated condemnation of the subject property. Yet, section 52 of the General Corporation Law provides as follows: “If it shall appear, to the satisfaction of the court, that the interests of the corporation will he promoted, it may authorize the sale, mortgage or lease of all or any part of the real property described in the petition, for such sum, and upon such terms as it may prescribe. The order shall direct the disposition of the proceeds of such sale, mortgage or lease.” (Emphasis supplied.)
There can be no doubt but that the interests of the petitioner will be promoted by permitting the instant sale of the property. Petitioner is presently operating the old Woman’s Hospital under a consolidated agreement entered into by the petitioner and Woman’s Hospital, at a loss calculated to be about $360,000 a year. Moreover, petitioner shows that with the proceeds to be realized from this sale it will immediately go forward and construct a new Woman’s Hospital such as will give the people of the City of New York greater medical care and services. No words of mine can sufficiently emphasize the benefit to St. Luke’s Hospital, as well as the City of New York, which will be derived from an immediate approval of the proposed sale.
Apart from these benefits, it may be noted, though only incidentally, that the proposed use of the property by Consolidated Edison for a substation is greatly needed for public safety, comfort, and convenience; as was dramatically demonstrated by the electric power failure which, not so long ago, seriously affected a large portion of the Borough of Manhattan. Moreover, the substation can be made to appear attractive, as is evident from plans submitted on this application. Also, the operation of the substation, like others already in operation elsewhere, would not be objectionable or detrimental to the community, since Consolidated Edison would be prevented from using the property for “ any noxious trade or business ’ ’ because of the restrictive covenants set forth in the deeds to the property.
Additionally, there is no doubt that the present offer of Consolidated Edison Company represents the fair market value of the property in question.
In Matter of Kensico Cemetery (193 Misc. 479, 483) the court held that ‘ ‘ on this application, the court cannot reasonably *892 refuse permission for the sale if it appears to its satisfaction that the interests of Kensico will be promoted. This is the meaning of section 52 of the General Corporation Law and any other procedure would be an arbitrary assumption of power by the court. Accordingly, even if the court thought, as by no means clearly appears here, that the transactions and agreements between Stannard and Hillsbrook were in any way reprehensible, it could not use them to deny its consent to the sale.” (See, also, Madison Ave. Baptist Church v. Baptist Church in Oliver Street, 46 N. Y. 131; Matter of Staten Is. War Mem. Assn., 286 App. Div. 887; Yorkville Sq. Club v. Lichtenberger, 140 Misc. 348, affd. 235 App. Div. 720; Matter of Young Israel of Bedford Bay, N. Y. L. J., July 14, 1953, p. 78, col. 2.)
By applicable law, therefore, it is quite apparent that the objections to the sale raised by the friends of the court, although doubtlessly made with fine, honorable and laudable intentions, are rendered legally irrelevant with respect to the issues appropriate on this application.
Finally, the requirements calling for the approval of the sale of the property as enumerated in article 5 of the General Corporation Law having been met, the court, under these circumstances, must grant the application. Accordingly, the contract as submitted is approved, save as to the purchase price, which is fixed in the sum of $1,825,000, and, in addition thereto, Consolidated Edison Company of New York, Inc., shall pay all brokerage commissions. The proceeds of such sale shall be used in the manner proposed by the petitioner.