Elvira E. Muck, Appellant, v. S. Edward Hitchcock et al., Respondents, Impleaded with Another.

Corporations — when words in statutes apply only to domestic corporations — foreign religious corporation not required to obtain leave of court for sale of its property in this state.

1. Broad words in a statute conferring powers and privileges on "a corporation" or on "any corporation" apply only to corporations organized under the laws of this state. The legislature in such cases is dealing with its own creations, whose rights and obligations it may limit, define and control.

2. The words of section 12 of the Religious Corporations Law (Cons. Laws, ch. 51) prohibiting religious corporations from selling their real property without leave of the court should be limited to domestic corporations. The prohibition does not extend to foreign corporations.

3. The provision of section 21 of the General Corporation Law (Cons. Laws, ch. 23) that "any foreign corporation * * * may take by devise any real property situated within this state * * * and convey it by deed or otherwise in the same manner as a domestic corporation," does not require a foreign religious corporation to obtain permission of the court before conveying its real property in this state as is required of a domestic corporation.

Muck v. Hitchcock, 149 App. Div. 323, reversed.

(Argued May 14, 1914; decided July 14, 1914.)

APPEAL by plaintiff from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 21, 1912, upon an order reversing a judgment in favor of defendants, respondents, entered upon a dismissal of the complaint as to them by the court at Special Term in an action for specific performance of a contract to convey land and directing judgment for plaintiff for the amount paid by her on said contract.

This action was brought to compel the specific performance of a contract to convey real property. The defendant, the American Millennial Association, is a religious corporation, organized under the laws of Massachusetts, with its headquarters at Boston in that state. On and prior to February 21, 1908, the association was the owner of certain land situate in Livingston county, in this state, not used so far as it appears for its corporate purposes, and held as devisee under the will of one Ansel Jenne.

On that day the association made a contract with the plaintiff to convey the land to her for the sum of $600. Fifty dollars was paid by the plaintiff to the association at the time of the agreement, and the balance of the purchase price, $550, was to be paid on or before July 1, 1908. It is claimed by the plaintiff that the association waived the requirement that the balance of the purchase price should be paid on or before July 1, 1908, and that thereafter and in the month of December, the plaintiff tendered the amount due and demanded of the association a deed. The association refused to carry out the contract or to return the $50 which it had received. The question as to the validity of the tender is not before the court.

In January, 1909, the defendant Welch made a contract with the defendant association to purchase the land in Livingston county for the sum of $1,400. This contract he subsequently assigned to the defendant S.

Edward Hitchcock. Proceedings to authorize a sale pursuant to this latter contract were taken under the statute in the County Court of Livingston county, and on February 23, 1909, the defendant S. Edward Hitchcock received a deed of the property under which he went into possession and now claims title to the land.

The defendants Hitchcock and Welch, as the court found, "purchased said lands of said association knowing that such association had made the contract to sell the same to this plaintiff." The action is against Hitchcock and his wife to compel them to deliver a good and sufficient deed of the lands in question to the plaintiff. The defendant the Millennial Association made default.

The court at Special Term held that the plaintiff could not enforce her contract against the defendants because permission of the court to make a conveyance under that contract had not been obtained by the association, and the complaint was dismissed, without costs. At the Appellate Division the court was divided. The minority was in favor of granting the relief demanded in the complaint, but a majority of the court concurred in an opinion to reverse the judgment and allow the plaintiff to recover of the defendant the $50 which she had paid to the Millennial Association, with interest, and also the costs of the action, and provided that upon payment of such amounts the contract between the association and the plaintiff should be canceled. A judgment was entered accordingly and the plaintiff appeals. The record contains only the judgment roll.

*Milton E. Gibbs* and *Maurice G. Ellenbogen* for appellant. The provisions of section 12 of the Religious Corporations Law are not applicable to foreign religious corporations. (*People ex rel. Jackson* v. *Potter*, 47 N. Y. 379; *Matter of Prime*, 136 N. Y. 347; *Congregation Beth Elohim* v. *Central Presbyterian Church*, 10 Abb. Pr. [N. S.] 484; *Madison* v. *Oliver*, 1 Abb. Pr. [N. S.] 214;

*Taylor* v. *Matteawan*, 122 App. Div. 406; *Douglass* v. *Pike*, 101 U. S. 677; *People* v. *Coler*, 190 N. Y. 268; *Dean* v. *Met. R. R. Co.*, 119 N. Y. 540; *Howe* v. *Peckham*, 6 How. Pr. 229; *Rosin* v. *Ledgerwood*, 89 App. Div. 245.)

*Albert C. Olp* for respondents. The provisions of section 12 of the Religious Corporations Law are applicable to foreign religious corporations. (L. 1909, ch. 53, § 12; L. 1909, ch. 23, § 20.) If it should be held that the statute (Religious Corporations Law, 12) is not applicable, the plaintiff is still in no position to ask for specific performance of her contract, as the common law forbids such an alienation without leave of the court. (*Madison Avenue Bap. Ch.* v. *Oliver St. Bap. Ch.*, 73 N. Y. 82; *Dudley* v. *Congregation, etc., of St. Francis*, 138 N. Y. 451; *Associate Presbyterian Congregation* v. *Hanna*, 113 App. Div. 12.) Section 20 of the General Corporation Law is applicable to religious corporations. (*Richards* v. *Hartshorne*, 110 App. Div. 650.)

CUDDEBACK, J. Section 12 of the Religious Corporations Law (Cons. Laws, ch. 51), provides as follows:

"§ 12. A religious corporation shall not sell or mortgage any of its real property without applying for and obtaining leave of the court therefor pursuant to the provisions of the Code of Civil Procedure," etc.

It has been held that broad words in a statute conferring powers and privileges on "a corporation" or on "any corporation" apply only to corporations organized under the laws of this state. "The legislature in such cases is dealing with its own creations, whose rights and obligations it may limit, define and control." (*Matter of Balleis*, 144 N. Y. 132, 133; *White* v. *Howard*, 46 N. Y. 144, 165; *Colquhoun* v. *Heddon*, L. R. [25 Q. B. D.] 129; *Saltmarsh* v. *Spaulding*, 147 Mass. 224; *United States* v. *Fox*, 94 U. S. 315; *Alfred University* v. *Hancock*, 69 N. J. Eq. 470; *Vanderpoel* v. *Gorman*, 140 N. Y. 563.)

In my opinion the words of section 12 of the Religious Corporations Law should be limited in like manner to domestic corporations. The object of the state in requiring a religious corporation to obtain leave of the court before conveying its real property, is to protect the society and its members from loss through unwise bargains, and to prevent perversion of the association's property. The state owes no service of that kind to foreign corporations. Indeed, it would be impracticable for the courts of this state to exercise such visitorial power over a foreign corporation. Our courts do not know the needs of the foreign association, and they cannot determine with any satisfaction, as the statute requires (General Corporation Law [Consol. Laws, ch. 23, § 73), whether the interests of the association will be promoted by the sale of its land in this state or not, nor can they with any satisfaction direct what disposition shall be made of the proceeds of sale. Furthermore, after the sale, the courts of this state would in most cases lose jurisdiction of the foreign corporation and its property. The power of visitation over foreign corporations can be exercised effectually only by the courts of the association's domicile. For these reasons, I think it should be said that the law of this state, prohibiting religious corporations from selling their real property without leave of the court, does not extend to foreign corporations.

It is, however, argued on behalf of the defendants that under section 21 of the General Corporation Law, the Millennial Association could not convey its land without leave of the court. Section 21 reads thus:

"§ 21. Any foreign corporation * * * may take by devise any real property situated within this state and hold the same for not exceeding five years * * * from the time when the right to the possession thereof vests in such devisee, and convey it by deed or otherwise in the same manner as a domestic corporation."

The defendants rely upon the final words of this sec-

tion, which read thus: "and convey it by deed or otherwise in the same manner as a domestic corporation." The argument is that this clause requires a foreign religious corporation to obtain permission of the court before conveying its real property in this state the same as a domestic corporation.

Section 21 includes all classes of foreign corporations, and is not confined to those formed for religious or similar purposes. The statutes of this state prescribe certain solemnities which shall attend the transfer of title to real property, and it was those solemnities and nothing more that the legislature had in mind. (*Saltmarsh* v. *Spaulding, supra; Hosford* v. *Nichols,* 1 Paige, 220, 226.)

The same reasoning upon which it has been said that the visitorial power of the court over religious corporations applies only to corporations formed under the laws of this state leads to the conclusion that the sanction of the court is not necessary to authorize the conveyance by a foreign corporation under the General Corporation Law.

It is only by grace of section 21 of the General Corporation Law that the Millennial Association could take and hold the land devised to it. The legislature could, of course, impose any condition it saw fit upon the right of the association to so take and hold the property. (*Christian Union* v. *Yount,* 101 U. S. 352, 354.) The condition which the legislature imposed was that the association should dispose of the land within five years. That condition was not made dependent in any degree upon obtaining leave of the court to convey.

The defendants further contend that if the statutes of this state do not apply, still the Millennial Association could not at common law convey its land without leave of the court (*Madison Ave. Baptist Church* v. *Baptist Church in Oliver St.,* 46 N. Y. 131; *Dudley* v. *Cong. of St. Francis,* 138 N. Y. 451), and the presumption being

that the common law prevails in Massachusetts, permission of the court was necessary before the Millennial Association could execute a conveyance under its contract with the plaintiff.

It may be doubted whether the common law, which is the same in effect as section 12 of the Religious Corporations Law, would apply to a conveyance required by section 21 of the General Corporation Law. It may also be doubted whether the law of Massachusetts, whatever it may be, can control or regulate the ownership and transfer of land in this state under the circumstances here presented. (*Nicholson* v. *Leavitt*, 4 Sandf. 252, 276; *Hosford* v. *Nichols*, 1 Paige, 220, 226; *Boyce* v. *City of St. Louis*, 29 Barb. 650, 652; *M'Cormick* v. *Sullivant*, 10 Wheat. 192; *Goddard* v. *Sawyer*, 9 Allen, 78; *Thompson* v. *Swoope*, 24 Pa. St. 474; *White* v. *Howard*, 38 Conn. 342.)

However, it is not necessary to pass upon those questions now, nor upon the question as to the power of the Millennial Association under its charter to convey land. The facts which give rise to such questions were not pleaded, or proved, or found by the trial judge, and for that reason the questions are not before the court. (*Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 N. Y. 528; *Harris* v. *White*, 81 N. Y. 532, 544; *Monroe* v. *Douglass*, 5 N. Y. 447; *Portsmouth Livery Co.* v. *Watson*, 10 Mass. 91.)

I, therefore, recommend that the judgment appealed from be reversed and a new trial granted, with costs to abide the event.

CHASE, COLLIN, HOGAN, MILLER and CARDOZO, JJ., concur; WILLARD BARTLETT, Ch. J., concurs in result.

Judgment reversed, etc.