The Sahoff Corporation, Appellant, *v.* William B. May Company Real Estate, Inc., Respondent.

First Department, December 1, 1939.

*Stanley Ide LaCov* of counsel [*John M. Percy* with him on the brief], for the appellant.

*Thomas G. Prioleau* of counsel [*Walker & Austin*, attorneys], for the respondent.

COHN, J. The action was brought upon an alleged agreement made in September, 1935, between plaintiff and defendant, licensed real estate brokers, to divide equally all commissions received by either upon a sale of a parcel of real property in Ardsley, N. Y. Plaintiff had been retained as sole agent by the New York Trust Company, as trustee, to offer the real estate for sale. The prospective purchaser was a client of defendant. Negotiations for a sale of the property were conducted by the parties until December 28, 1935, when defendant advised plaintiff that the customer was no longer interested. Plaintiff thereupon did nothing further in the matter.

It appears that, unknown to plaintiff, defendant's customer, in April, 1936, actually bought the property and paid defendant $3,000 as commission. Defendant neglected to share this commission with plaintiff. It further appears that after defendant's purchaser had completed negotiations for the transfer of the property an officer of the New York Trust Company in charge of the transaction telephoned plaintiff and asked plaintiff to waive its claim for commissions, stating that to the best of such officer's belief the purchaser was not the same prospective purchaser with whom plaintiff had been previously negotiating. William May, the president of defendant, denied that he had ever made any arrangement with plaintiff in respect to sharing commissions.

After a trial, a jury in the City Court awarded plaintiff as damages one-half of the sum collected by defendant, to wit, $1,500, plus $225 interest.

It is now suggested that plaintiff should have disclosed to his principal the existence of the pooling arrangement between the parties and that the buyer also intended to pay a commission in which plaintiff was to share. At the trial defendant made no claim that the alleged oral agreement to pool commissions was improper because the respective principals had not been apprised of the alleged arrangement. Indeed, there is no evidence one way or another as to whether such an arrangement had been revealed. That issue was not presented at the trial by the pleadings or by the proof, nor was it submitted to the jury in the charge of the court. The case was submitted on the question as to whether the alleged agreement had been made, as to whether defendant had received a broker's commission of $3,000 and as to whether plaintiff was deceived by

defendant into waiving a commission to which plaintiff would otherwise have been entitled from the seller. In this submission, defendant fully acquiesced. In the absence of any proof or defense that the agreement sued upon was unenforcible for the reason now urged, it is too late to consider such a question. (*Muck* v. *Hitchcock*, 212 N. Y. 283, 289; *Svenson* v. *Svenson*, 178 id. 54, 62; *Valentine* v. *Long Island R. R. Co.*, 187 id. 121, 126; *McCann* v. *City of Albany*, 158 id. 634, 640, 641.) In *Muck* v. *Hitchcock* (*supra*, at p. 289) the Court of Appeals said: " The facts which give rise to such questions were not pleaded, or proved, or found by the trial judge, and for that reason the questions are not before the court. (*Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 N. Y. 528; *Harris* v. *White*, 81 N. Y. 532, 544; *Monroe* v. *Douglass*, 5 N. Y. 447; *Portsmouth Livery Co.* v. *Watson*, 10 Mass. 91.) "

Stress has been placed upon the fact that during the course of the negotiations between plaintiff and defendant, which lasted for a period of about three months, defendant stated in a letter to plaintiff that defendant expected to receive from the seller the full commission of five per cent. This condition was contrary to the agreement allegedly made between the parties. However, the evidence which the jury had the right to consider shows that soon after the letter had been received, plaintiff's representative talked with defendant's president over the telephone; in that conversation the parties had an understanding that the statement in defendant's letter was not intended to disturb the original agreement between them. Plaintiff's omission to answer defendant's communication by another letter rather than by a telephone conversation certainly is not fatal to plaintiff's case. The jury may well have believed that plaintiff did not anticipate a law suit and that it was not unusual for a businessman to respond verbally to a written message.

It is also claimed by defendant that the trial court erroneously permitted testimony by plaintiff's representative, Hoffman, concerning his telephone conversation with an officer of the New York Trust Company wherein plaintiff was asked to waive its commission. If the reception of such testimony was error, it was cured when the court, with the consent of defendant, thereafter received in evidence a letter sent by plaintiff to the New York Trust Company in which letter plaintiff wrote: " * * * in view of the conditions explained to us, we will waive all and any brokerage commissions in connection with this particular sale."

This excerpt was meaningless without the explanation tendered by plaintiff and for that purpose it was competent.

We are unable to agree with the conclusion that the evidence adduced at the trial did not support plaintiff's recovery. The jury had a right to find, as claimed by plaintiff, that an agreement existed between the parties to divide commissions; that, if there were such an agreement, defendant did not act in good faith when, without plaintiff's knowledge, it continued to negotiate with the original prospective purchaser and eventually consummated a sale, as a result of which it was paid a commission of $3,000; and that plaintiff had been misled into waiving its commission from the seller by reason of defendant's conduct which induced plaintiff to believe that the original customer was no longer interested in the property.

Though the evidence was conflicting, there was ample proof in the record to sustain the jury's determination. The judgment of the Appellate Term should not have been substituted for that of the jury upon an issue of fact. Where a verdict is amply supported by the evidence and the testimony is neither incredible, nor insufficient as a matter of law, the jury's determination is conclusive. (*Roberts Associates, Inc.*, v. *Title Guarantee & Trust Co.*, 256 App. Div. 850; *Hogan* v. *Franken*, 221 id. 164; *Dashnau* v. *City of Oswego*, 204 id. 189, 192; appeal dismissed, 236 N. Y. 542; *Mieuli* v. *New York & Queens County Railway Co.*, 136 App. Div. 373.).

The determination of the Appellate Term should be reversed and the judgment of the trial court in favor of plaintiff should be affirmed, with costs and disbursements to the plaintiff in this court and in the Appellate Term.

MARTIN, P. J., and GLENNON, J., concur; UNTERMYER and DORE, JJ., dissent and vote to affirm the determination of the Appellate Term.

DORE, J. (dissenting). The contract on which plaintiff seeks to recover is a claimed oral agreement between plaintiff as broker for the seller and defendant as broker for the buyer, to " pool " between them, as plaintiff's witness testified, " on a fifty-fifty basis " all commissions received from either or both principals. Defendant emphatically denied that any such oral agreement was ever made. As the claimed agreement gave each broker a special interest in commissions paid by the other party to whom his own client's interests were naturally adverse, the arrangement was improper unless fully revealed to and approved by each of the principals. Plaintiff adduced no evidence to show that the alleged pooling arrangement was ever revealed to its own client.

The testimony purporting to establish the agreement is destroyed by plaintiff's own documentary proof. Defendant, as broker for a buyer, on October 24, 1935, wrote plaintiff, as seller's broker, a long

letter making a formal offer for the purchase of the property, setting forth all the conditions " which must be fulfilled " before the proposed buyer would be bound to take title, and ending with the following: " This offer is made upon the further condition that this Company [defendant] shall receive on a sale of the whole or any part of the premises above described one full commission at the rate of 5%." Plaintiff offered this letter in evidence and is bound by its terms. It is usual and customary, and plaintiff's officers so admitted, that the seller pays the commission to the buyer's broker, here the defendant. Defendant's letter of October twenty-fourth notified plaintiff that defendant as buyer's broker insisted on receiving this usual and customary full commission on the sale, and indeed made that a condition " which must be fulfilled " before there could be a sale. That condition openly contradicted the oral agreement claimed to have previously been made, that all commissions were to be pooled. Plaintiff's witnesses admitted that fact. But to that letter there never was any answer written by plaintiff. Just as the pooling agreement was purely oral, so the only claimed answer to the letter was an alleged telephone conversation. Hoffman, plaintiff's president, testified that when he received the letter, " immediately on my reading it I knew it was contrary to what our agreement was," and thereupon telephoned defendant, spoke to Mr. May about it, and claimed May told him with reference to the five per cent commission mentioned that May thought he was going to be able to get that from his own purchaser, and so Hoffman said he concluded " then we would each make five per cent out of the proposition." This testimony not only contradicts the plain language of the letter, but suggests an incredible and even absurd agreement to divide commissions when five per cent was to be received by each broker from his own customer and there was no need of any division. On November 15, 1935, defendant, through its president, William B. May, again wrote plaintiff, " Referring to our letter to you of October 24th, 1935," and May advised plaintiff that he had succeeded in getting an increase of the offer to $60,000 cash for the property " therein described upon the same terms and conditions." To this second letter reiterating in writing as one of the essential terms and conditions of the sale that defendant receive " one full commission at the rate of 5%," there was again no answer. Hoffman could not even state whether he called up May after receiving that letter. Had the agreement been as plaintiff claims, Hoffman, an experienced real estate broker, undoubtedly would have so stated promptly in writing and would not have left the important question of commissions to a talk over the telephone twice contradicted by

two unanswered letters of defendant explicitly insisting on an entirely contrary arrangement.

But that is not all. On November 25, 1935, plaintiff wrote its own employer, the New York Trust Company, submitting to that company through Mr. Tighe, its assistant secretary, defendant's increased cash offer of $60,000, and purporting to give the " conditions " thereof; all of the terms set forth in defendant's letters of October twenty-fourth and November fifteenth were incorporated except the very significant and important condition that defendant, as buyer's broker, expressly demanded the usual full five per cent commission, which was entirely omitted. When asked why that particular condition was omitted, when all others were given, one of plaintiff's witnesses, an officer of plaintiff corporation, gave the wholly incredible explanation: " A. Because it was not necessary." If there was in fact an agreement to pool commissions, then plaintiff in its letter to its own employer should have made full disclosure of all the terms including the important condition relating to full commissions to be paid by its own client to the buyer's broker. Unless we presume unethical conduct on plaintiff's part, its testimony is incredible on its face. A broker is employed to effect a sale on terms most advantageous to his own employer, and it is an axiom of good morals, as well as a rule of law, that there cannot be double employment without full knowledge on the part of both seller and buyer.

On April 2, 1936, plaintiff wrote its employer, the New York Trust Company, waiving all commissions on the sale of the property " in view of the conditions explained to us." Plaintiff contended on the trial that when it wrote that letter it was deceived; that on the morning of April 2, 1936, Mr. Tighe of the New York Trust Company called Hoffman on the telephone and stated that an offer had been made " by some entirely different people than the people that we had been negotiating with," and asked whether " in view of the fact that it was an entirely independent group and the fact that the widows and orphans had suffered so much by reason of the mortgaged condition of the property and the various foreclosures thereon, whether in this case we would be willing to forego our commission." Hoffman testified he then " stated very specifically to Mr. Tighe that if it were the fact that the people who are now making the offer for the purchase of this property on a net basis were entirely different from those with whom we had the communications in the past, we would be perfectly willing to forfeit our commission." It should be obvious that this telephone conversation with Mr. Tighe, who was not produced, was pure hearsay and wholly incompetent. Defend-

ant's counsel promptly objected before any of the conversation was given, but the court, over objection and exception, permitted the entire conversation which was obviously highly prejudicial to defendant. If there were any such conversation, it should have been easy for plaintiff to produce Mr. Tighe, secretary of plaintiff's own employer, to testify to the facts and at the same time enable defendant to explore who had made the representation that the purchasers were entirely different. This is the only testimony in the record explaining the " conditions " mentioned in plaintiff's letter of April 2, 1936, that led plaintiff to waive commissions. Except for this incompetent evidence and the inescapable inferences a jury would draw therefrom, there is nothing to show that the letter of April second was written because of any acts of deception on defendant's part, an issue that was vital to plaintiff's case.

As a result of this reversal of the Appellate Term's judgment, plaintiff will now share equally with defendant in commissions paid not by plaintiff's client, the seller, but by defendant's client, the purchaser, under a claimed oral agreement which, if ever made, was unethical and was destroyed by plaintiff's own documentary proof; and plaintiff will recover on a theory of fraud and deceit on defendant's part in procuring plaintiff's waiver of commissions, although there is no competent evidence whatever before the court to show any fraud on defendant's part in procuring such waiver. The Appellate Term was entirely correct in its determination that plaintiff's evidence was insufficient to support a recovery.

The determination of the Appellate Term should be in all respects affirmed, with costs.

UNTERMYER, J., concurs.

Determination appealed from reversed and the judgment of the City Court in favor of the plaintiff affirmed, with costs and disbursements to the plaintiff in this court and in the Appellate Term.