M. Henry Martuscello, J.
In an action to compel the defendant Church to specifically perform the terms of a contract for the sale of its property and to declare that the individual defendants herein are estopped to assert any rights in such premises, the defendants join in motions for summary judgment and for other relief.
This controversy arises by reason of the fact that the defendant Church contracted to sell the same property to two different unrelated parties. On September 26, 1958 the Church agreed to sell its property to the defendants Segal and Kurz for $40,230, receiving at the signing of the contract $4,000. A petition for the sale of said property to these defendants was approved by order of this court which provided that out of the proceeds of the sale $16,092 was to be paid to Concetta Dell’Osso, the mother *189 of the pastor of the church to whom an interest in that amount was heretofore conveyed by the Church, and $16,206.75 was to be used for the completion of a new church under construction in Lake Success, Nassau County, New York.
On November 13, 1958 the Church’s attorney wrote to the attorney for defendants Segal and Kurz as follows: “ Since your clients had had approximately two months in which to secure a title report pertaining to this purchase, the excuse given by the purchasers that a title report * * * cannot be had until the end of December is not made in good faith, as a title company report could have been secured * * * within, at most, two or three weeks from September 26, 1958, the date when the contract between the above parties was signed. Your clients’ failure to close in accordance with the contract will cause irreparable injury and damage to my clients, who will be required to pay cash for the new church property in Nassau County.”
On November 20,1958, the date set for closing of title, defendants Segal and Kurz requested an adjournment asserting they had not as yet received the title report. The defendants Segal and Kurz allege that the request was made in addition to the foregoing by reason of the fact that on said date the Church could not convey the premises free of tenancies as was provided for in the contract of sale. The Church, in need of money for the purpose of closing title on the following day for the new parsonage property at Lake Success, refused to grant the adjournment unless Segal and Kurz paid the additional sum of $15,000 on the contract. Upon their refusal to pay this additional sum, the deed was tendered to Segal and Kurz and their failure to close title was noted.
On November 24, 1958 counsel for the Church wrote to Segal and Kurz’ attorney as follows: “ It is clearly evident that your client did not enter into the contract of sale in good faith as they did not then nor do they at present have the necessary funds to close title as provided by contract. This unconscionable attitude on the part of your clients has caused irreparable damage to the church which I represent as attorney and I have been instructed by my client to hold Messrs. Segal and Kurz responsible for all damages suffered by English Evangelical Lutheran Church of the Ascension of Borough Park, Brooklyn.”
On November 26, 1958 Segal and Kurz filed a lis pendens against the property. In the meanwhile the closing of title to the afore-mentioned Nassau County property was adjourned to December 16, 1958.
The plaintiff alleges that its president was approached on December 1, 1958 by a real estate broker on behalf of the *190 Church with an offer to sell to plaintiff the premises in question for $35,000; that the pastor and counsel for the Church told plaintiff’s president that although a lis pendens was filed against the property the Church was not served with any summons and complaint by the defendants Segal and Kurz and that they have been declared to be in default; that on December 16, 1958 a formal tender of the deed to the Nassau County parsonage was made to the Church and the latter was declared in default; that on the following day the pastor called the plaintiff and its attorney urging them to buy the property for $35,000 and to close a contract, and accordingly an appointment was made for the signing of the contract at the office of the Church’s attorney for December 18, 1958; that on said date the parties entered into contract for the sale of the premises for $35,000; that prior to entering into the contract the Church’s attorney stated that he had been in touch with the attorney for defendants Segal and Kurz and that he was informed that an assignment of the contract between the Church and Segal and Kurz and an assignment of a contract between Segal and Kurz and the owner of the adjoining property to the Church and a consent for the withdrawal of the lis pendens filed were being delivered to the Church’s attorney. It is further alleged that it was agreed between plaintiff and the Church in a separate instrument other than the contract of sale of the property that the Church would deliver to plaintiff an assignment of defendants Segal and Kurz’ contracts with the Church and the owner of the adjoining property and upon delivery of the assignments and consent for the cancellation of the lis pendens plaintiff would pay the Church’s attorney $500. In addition, it is alleged that Mrs. Dell’Osso, the mother of the pastor, signed an instrument agreeing to make up the difference in sales price between the first and second contracts out of her share of the money to be received so that the Church would not be hurt in any manner. Plaintiff further alleges that during the preparation of the contract the attorney for defendants Segal and Kurz telephoned the Church’s attorney and informed him that he would be there shortly with the necessary documents which he had; that relying on these representations plaintiff entered into the contract, paying to the Church on the signing thereof $10,000 in certified checks; that the pastor immediately left with the money to make payment on the Nassau County parsonage, taking title to it eventually on December 23, 1958; that the attorney for defendants Segal and Kurz failed to arrive and the afore-mentioned necessary papers were never delivered; that on December 23, 1958 the plaintiffs were informed that defendants Segal and Kurz had advised the *191 Church that they intended to take title to the property and the adjoining property; that to protect its rights plaintiff filed its contract and Us pendens against the property; that on December 30, 1958 the Church’s attorney handed to plaintiff’s president his personal uncertified check for $10,000 paid on contract but that plaintiff returned the same to the attorney.
The Church alleges that no negotiations had been held with defendants Segal and Kurz concerning the assignment of their contracts with the Church and the adjoining property but that all negotiations were made with their attorney; that it now appears that said counsel had no authority from Segal and Kurz to enter such negotiations since they intended to take title and in fact notified the Church on December 23, 1958 that they intended to take title both of the Church and the adjoining property on December 30, 1958; that Segal and Kurz took title on December 30, 1958 of the adjoining property; that they tendered the monetary consideration required to be paid on the contract between them and the Church and that the Church tendered the deed to them but could not close title by reason of the Us pendens on file. It is further alleged that it would not be in the best interests of the Church to convey to plaintiff since it would be getting less money for the property were it conveyed to the plaintiff rather than to the defendants Segal and Kurz and the Church would be subjected to a suit for damages if the property was conveyed to the plaintiff.
The defendants Segal and Kurz, as a separate defense and by way of counterclaim against the Church for specific performance of their contract, assert that they did not take title on November 20, 1958 because the Church could not convey the premises free of tenancies and because their title company was not ready with its report; that time was not of the essence of the contract; that when they were advised that the title company would issue its report and learned that the Church premises were vacant, they notified the Church that they were ready to take title pursuant to contract; that they tendered the balance due on the purchase price on December 30 and were advised that the Church was prepared to convey title to them; however since plaintiff had encumbered the property, title did not close; that they had no dealings with plaintiff and made no representations to it; and that their rights to the property are superior to those of the plaintiff.
All the defendants urge that plaintiff’s contract with the Church was invalid and accordingly specific performance thereof cannot be obtained. The basis for this claim is founded upon the assertion that under section 12 of the Religious Corporations *192 Law, no sale of a religious corporation’s property may be had unless leave therefor has been granted by the court, and since no approval of the court had been secured for the sale to the plaintiff the contract is invalid. Cited with approval is the answer to a similar assertion in Muck v. Hitchcock (149 App. Div. 323, revd. 212 N. Y. 283 on grounds other than stated herein) where the court said (pp. 328-329): “ We are, however, of the opinion that the trial court erred in holding as matter of law that a religious corporation cannot enter into a valid contract of sale without permission of the court. Concededly, under our statutes, a domestic religious corporation cannot make a valid conveyance of its real property without such leave. But it seems logical and reasonable that a religious corporation may enter into a contract for the sale of its real property with the condition that conveyance be made upon permission of the court, if such can be obtained, and that even if such condition be not expressed, the court would imply such a provision in the contract. And we do not doubt that a court of equity in an action to compel specific performance of such a contract has ample power to inquire into the fairness of the contract and as to its advantage or disadvantage to the religious corporation, and to approve the proposed conveyance and direct it to be made where, upon all the facts, no valid reason appears for refusing such relief. (Congregation Beth Elohim v. Central Presbyterian Church, l0 Abb.Pr. [N. S.] 484.) ”
But it is further alleged that the sale to the plaintiff was not in the best interests of the Church nor was it approved by two thirds of the Church’s directors at a meeting duly called and held, as provided for in section 50 of the General Corporation Law. As to the claim of lack of approval, an examination of the papers on file in this court pertaining to the approval of the contract of sale of the Church property to the defendants Segal and Kurz reveals that the board of trustees of the Church had on April 7,1957 generally authorized the sale of the property without any specification as to the buyer or the price. Whether the sale was in the best interests of the Church would be a question of fact to be determined upon a hearing (Matter of Barusek [Beth Jacob School], 1 Misc 2d 950) and on that question the court may very well take into consideration that the substantial deposit of $10,000 made by the plaintiff enabled the Church to relieve itself of the default suffered on December 16 in taking title to the Nassau property, thus avoiding the forfeiture of its own deposit of $6,300 given on the signing of the contract therefor; and also that the Church might have been subjected to an action for damages resulting from the breach *193 thereof. Moreover, the afore-mentioned Mrs. Dell’Osso, who, as stated above, was to receive almost one half of the proceeds to be realized from the sale of the Church property, had agreed with the Church, apparently as an inducement to it to enter into a contract with plaintiff, to accept a lesser amount than due to offset any loss resulting to the Church from its contract with the plaintiff. Then too there is a possibility that Segal and Kurz forfeited their deposit of $4,000 in the event it is found that they were in default on the closing date of November 20 (Ziehen v. Smith, 148 N. Y. 558).
It is also urged that the Church cannot perform the contract since defendants Segal and Kurz have tendered the monetary consideration required under their contract with the Church. Equity will not decree specific performance of a contract for the purchase of real estate where it is not possible for the defendant to convey the land, and thus, where title has been passed by the defendant to another after the execution of a contract, the court will not grant a vain judgment (Saperstein v. Mechanics & Farmers Sav. Bank of Albany, 228 N. Y. 257). Here, although tender of the consideration by the defendants Segal and Kurz was made, title is still retained by the Church and accordingly the Church is still capable of conveying the property to anyone else. Equity, of course, will not compel the defendant to do that which would be a breach of duty to defendants Segal and Kurz unless for some reason the rights of the latter are inferior to those of the plaintiff (5 Corbin, Contracts, § 1170). Sufficient facts are presented herein to create an issue whether or not plaintiff’s rights are superior to those of defendants Segal and Kurz in view of the latter’s failure to close title on the appointed day and in view of the assertion that their attorney represented that he was delivering their assignment of the contract and cancellation of the lis pendens.
It is further contended by the defendants that performance of plaintiff’s contract is not possible since the Church was required to secure from Segal and Kurz assignments of their contracts with the Church and the adjoining property owner and said vendees have refused to deliver the same. The provision for the securing of the assignments was for the benefit of the plaintiff and did not constitute a condition to the delivery of the deed by the Church to said plaintiff. But irrespective of the nature thereof, the plaintiff may waive this provision and compel performance to the extent that performance is possible. (Jandorf v. Smith, 217 App. Div. 150; New York Investors v. Manhattan Beach Bathing Parks Corp., 229 App. Div. 593, affd. 256 N. Y. 162; Bostwick v. Beach, 103 N. Y. 414, 418, 422; *194 Catholic Foreign Mission Soc. v. Oussani, 215 N. Y. 1; Maas v. Morgenthaler, 136 App. Div. 359, 360; Clark v. West, 193 N. Y. 349.)
The Church 'finally claims that it having tendered to the plaintiff a refund of the amount paid on account of the purchase price, is relieved of any liability under the contract pursuant to the provision therein which reads: “ In the event that the seller is unable to convey title in accordance with the terms of this contract, the sole liability of the seller will be to refund to the purchaser the amount paid on account of the purchase price and to pay the net cost of examining the title, which cost is not to exceed the charges fixed by the New York Board of Title Underwriters, and the net cost of any survey made in connection therewith insured by the purchaser, and upon such refund and payment being made this contract shall be considered cancelled. ’ ’
If securing the afore-mentioned assignments of contracts were of the essence of the contract entered into with plaintiff, the claim thus advanced would be tenable. It being otherwise, however, it occurs to me that this clause merely provides for a limitation of liability in the event the Church was unable in good faith to convey title to the premises in question and that it has no application where the inability to convey title is due to its own conduct as is claimed by the plaintiff (cf. Mokar Prop. Corp. v. Hall, 6 A D 2d 536, 539).
Under the circumstances disclosed herein the Church should not take upon itself deciding which of the two purchasers has superior rights but should leave that question for determination by the court. Accordingly, defendant Church’s motion for summary judgment is denied.
The individual defendants’ motion for summary judgment is also denied since there is an issue between them with respect to the priority of rights to the property. And although the Church does not object to the giving of title to the defendants Segal and Kurz, specific performance cannot be decreed until there is a determination that such decree would not produce an injustice to the plaintiff (Guokas v. Bishara, 57 N. Y. S. 2d 588).
The branch of the motion pursuant to section 124 of the Civil Practice Act for an order requiring plaintiff to post security is denied since it appears that the Church is adequately protected by its retention of the $10,000 given to it by plaintiff on account of the purchase price. All other branches of the motion, in view of the determination based on the motion for summary judgment, are denied.
Settle order on notice.