■ In the Matter of the Estate of ANTON MEISTER, Deceased. EUGENE B. McAULIFFE, as Executor of ANTON MEISTER, Deceased, et al., Respondents; LOCKHEED ELECTRONICS CO., INC., Appellant.— Decree, Surrogate's Court, New York County, on application for advice and directions, entered on August 6, 1971, affirmed. Respondents shall recover of appellant $50 costs and disbursements of this appeal. The facts are stated, as far as the statement goes, in the dissenting opinion, and several significant omissions are hereinafter adverted to. The Surrogate found on the facts "that the parties contemplated a formal written contract and that they were not to be bound until the contract was signed." We agree. Our dissenter finds, to the contrary, that "the conclusion is practically inevitable that the minds have met." The surrounding circumstances show otherwise. To begin with, the transaction was one in which executors, bound by the axiomatic duty to sell property at the highest possible return to their estate, shied off on ascertaining — true, at the last moment — that they had a better offer. Such is the "area for future dispute" negated by our brother. To the very end, there was nothing done to indicate any other intent on the seller's part. It is not to be shrugged off that the executor's attorneys were never given authority either to sell or to contract, but only to draft a document; that every proposed change during negotiation was sub-

mitted by counsel to their clients, who always retained control; that the letter of transmittal (Jan. 21) by the executors' counsel to the prospective purchaser's counsel referred to the enclosure as a "proposed" contract and invited suggestions for change; that, on February 4, in returning the document which had been signed by the prospective purchaser to counsel for the executors, the purchaser's lawyer omitted from his letter a most significant word appearing in his client's letter of the preceding day to him: "proposed." We do not find here an agreed-upon contract "pieced together out of separate writings" (*Crabtree* v. *Elizabeth Arden Sales Corp.*, 305 N. Y. 48, 54). Nor do the letters of January 21 and February 4, particularly when the latter is read in the context of the letter of February 3, add up to the written offer, followed by acceptance, as found in *Tymon* v. *Linoki* (16 N Y 2d 293). The resemblance here is more to the lawyer's letter of transmittal, reviewed and found wanting in *Scheck* v. *Francis* (26 N Y 2d 466). To go even further, the Statute of Frauds, whether that of New York or New Jersey, is not satisfied. Both require a real estate sale agreement to be in writing. New York's statute (General Obligations Law, § 5–703) requires the agent's authorization to be written; New Jersey's (N. J. Stat., § 25:1–5) requires establishment of the authorization "by proof that it has been expressly conferred or * * * of circumstances from which its grant may be reasonably inferred"; neither standard is here met. In *Cohon & Co.* v. *Russell* (23 N Y 2d 569) there was a writing, signed by the party to be charged, fully identifying the terms, unequivocally and clearly showing intention to be obligated. This case, cited in the dissent, has no application here. Nor does *1130 President St. Corp.* v. *Bolton Realty Corp.* (300 N. Y. 63) in which is found a writing setting forth all the terms, leaving only form to be resolved. Here the Surrogate properly found no agreed-upon writing, and in any event, no compliance with the Statute of Frauds. Concur — McGivern, J. P., Markewich, Kupferman and Tilzer, JJ.; Steuer, J., dissents in the following memorandum: The appeal is from a decree of the Surrogate in determining a proceeding by the executors of the estate of Anton Meister to obtain advice and direction concerning certain real estate owned by the estate, and from the denial of a cross petition by an alleged purchaser which seeks a declaration that it has a binding contract for the sale of that property. It appears that there are two executors, Chemical Bank and Eugene B. McAuliffe. The estate owned approximately eight and a half acres of land, improved by factory buildings, in Watchung, New Jersey. The property was rented to the appellant, Lockheed Electronics Co., Inc. (herein Lockheed). In October, 1970 the executors offered the property for sale subject to an existing first mortgage and the Lockheed lease. The offering was made in a brochure which stated that any offer was subject to the approval of the executors and the appropriate committee of the bank, and upon approval an appropriate contract of sale would be prepared by the owner. On November 20, 1970, Lockheed, after some oral negotiation with an officer of the bank, offered $585,000, all cash, net above the mortgage. The bank promptly notified the individual executor. He approved, and the bank on the following day submitted the offer to its real estate and mortgage committee, which approved the offer. An officer of the bank notified Lockheed that the offer had been accepted and that counsel were instructed to draw an appropriate contract. Thereafter, on December 3, 1970, the bank sent a formal notification to the individual executor that counsel had been instructed as indicated. The executor indicated his consent by signing and returning the notification to the bank, as the notification requested. After receipt of this approval the bank's committee met again and its minutes show a more formal acceptance of the offer. On

December 29, counsel, having drawn the contract and having had it approved by the bank and the executor, sent it to Lockheed. Lockheed submitted the contract to its own counsel, who suggested three corrections in the description of the property and three more formal clauses. These were all promptly agreed to by the executors. The contract, with the corrections, was returned to Lockheed for execution on January 21, 1971, with a request that it be executed and returned with a check for the down payment. On February 4, 1971, this was done. The executors never executed the contract. Instead, on February 23, 1971, this proceeding was instituted. This state of facts presents two questions. The first is, did the parties intend to be bound or did they intend to make their obligations contingent upon the execution of the formal instrument. If the latter, the Surrogate's determination is unassailable. And if the buyer should prevail on this issue, there remains the question of whether the Statute of Frauds renders the contract so made unenforceable. Taking these questions in order, there can be little doubt that the virtually uncontradicted oral exchanges show no reservation on the part of the executors. The simplicity of the transaction involving no terms left to future resolution would lead to this conclusion. Where there is no area for future dispute, and none has either developed or been suggested, the conclusion is practically inevitable that the minds have met (1 Williston, Contracts [3d ed.], § 28; *Disken* v. *Herter*, 73 App. Div. 453, affd. 175 N. Y. 480). It is, of course, conceivable that either party may intend to reserve making up his mind to the actual moment of signing, but a determination that this unusual course of conduct has been adopted should, in order to be accredited, have something in the way of proof beyond post hoc statements of intent. Here the proof as derived from the conduct of the parties is all the other way. On December 11, 1970, after the bank had received its coexecutor's approval and before the draft of the formal contract was completed, the bank received a slightly higher offer from one Reynolds. To this the bank replied in writing that it was unable to consider this offer because a previous offer (the one in suit) had already been accepted. The circumlocution, or, to put it more crudely, the double talk, offered in an attempt to reconcile this expression of intent with the position taken at the trial, is an insult to normal intelligence. Against this the only support offered to bolster the respondents' contentions as to their mental state is the use of the expression "proposed contract" in the covering letter of counsel transmitting the document. This is too thin a reed even to merit refutation. Like conduct has been held for over a century to admit of but one inference — that the parties intended to be bound (*Pratt* v. *Hudson Riv. R. R. Co.*, 21 N. Y. 305). Coming now to the Statute of Frauds, the applicable statute would be that of New Jersey where the property had its site. However, the parties have pointed to no basic difference between the laws of that State and our own, and, absent conflict, this point can be eliminated. The statute requires not a written agreement but a memorandum of the terms of the oral agreement signed by the party sought to be charged. The record is replete with such signed memoranda. There is not a single term in the formal document prepared at the written authorization of the respondents that is not covered by these writings. The use of the statute here perverts its purpose. No question of perjury is presented, nor any question as to what took place. The statute is invoked " 'to supply a cloak of immunity to hedging litigants lacking integrity' " (*Cohon & Co.* v. *Russell*, 23 N Y 2d 569, 574). "The danger of fraud and perjury, generally attendant upon the admission of parol evidence, is at a minimum in a case such as this " (*Crabtree* v. *Elizabeth Arden Sales Corp.*, 305 N. Y. 48, 55). While the other memoranda appear quite

sufficient to satisfy the statutory requirements (*Tymon* v. *Linoki*, 16 N Y 2d 293), the written authorization to the attorneys to draft the contract and the approval of their draft is conclusive (*1130 President St. Corp.* v. *Bolton Realty Corp.*, 300 N. Y. 63; *Hotel Woodward Co.* v. *Ford Motor Co.*, 258 F. 322; *Ideal Structures Corp.* v. *Levine Huntsville Development Corp.*, 396 F. 2d 917). The decree of the Surrogate should be reversed and the cross petition granted.