CHURCH OF GOD OF PROSPECT PLAZA, Respondent-Appellant, v FOURTH CHURCH OF CHRIST, SCIENTIST, OF BROOKLYN, Appellant-Respondent.

Second Department, September 22, 1980

APPEARANCES OF COUNSEL

*Thacher, Proffitt & Wood (Dwight B. Demeritt, Jr.,* and *Anthony Limitone, Jr.,* of counsel), for appellant-respondent.

*Stephen A. Humsjo* for respondent-appellant.

**OPINION OF THE COURT**

DAMIANI, J.

This is an appeal by the defendant from a judgment of the Supreme Court, Kings County, which awarded the plaintiff money damages for breach of a contract to sell real property owned by the defendant and upon which its church edifice was erected. The plaintiff cross-appeals from so much of the judgment as failed to direct specific performance of the contract.

Because of a decline in its membership the defendant, Fourth Church of Christ, Scientist, of Brooklyn, New York, decided to sell its house of worship and move to a smaller facility which it also owned. Plaintiff, Church of God of Prospect Plaza, offered to buy the real property and, after negotiations, defendant's membership voted unanimously to sell the same in accordance with plaintiff's offer. In accordance with defendant's instructions, its attorneys prepared a proposed contract and sent it to plaintiff. Plaintiff executed the contract and returned it with a deposit according to the instructions given by the attorneys for the defendant.

At about the same time, defendant received an offer from a sister church to merge their congregations and also received an all cash offer for the property from yet another prospective purchaser. Subsequent to the return of the contract signed by the plaintiff, defendant's membership voted to consolidate with the sister church and to rescind the acceptance of plaintiff's offer. The contract was never executed by the defendant.

In light of the merger, plaintiff was content to forego its rights to purchase the property, but when it subsequently developed that the merger was not permitted by defendant's mother church and defendant entered into a contract of sale with the other buyer which had made an "all cash" offer, plaintiff decided to commence this action. In fact, the merger was eventually approved, the contract between defendant and the second offeree was canceled and that offeree purchased the property of defendant's sister church. Defendant's attorneys, who had obtained court leave approving all the transactions except the contract with the plaintiff, never informed the court of the plaintiff's status.

On a prior appeal in this action, we reversed an order granting summary judgment to the defendant and remitted the action to determine whether certain signed corporate minutes of the defendant authorizing the sale constituted a sufficient memorandum of the contract of the parties to satisfy the Statute of Frauds (*Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn,* 59 AD2d 732). Pursuant to court-ordered discovery, plaintiff obtained the defendant's signed corporate minutes authorizing the sale and thereafter it sought summary judgment. Special Term held that the "corporate minutes were duly executed and constituted a sufficient signing to satisfy the Statute of Frauds and an adequate acceptance of the plaintiff's offer" and it set the action down for a determination of the fairness of the contract and as to whether there were any valid reasons for refusing plaintiff's request for performance of the agreement (see Religious Corporations Law, § 12). After an evidentiary hearing the Referee determined that the contract was fair and enforceable and offered the defendant an alternative of either specifically performing the contract or paying damages in the amount of the difference between the contract price of $150,-000 and the fair market value of $225,000 at the date of the hearing, plus plaintiff's attorney's fees. The judgment appealed from was entered in accordance with the defendant's election to pay damages.

The corporate minutes of the defendant indicate that its membership unequivocally accepted the offer of the plaintiff to purchase its church property on the terms proposed by the plaintiff. Although the vote of defendant's membership constituted an acceptance, such acceptance was not effective until communicated to plaintiff (see *White v Corlies,* 46 NY 467, 469; 1 Corbin, Contracts, § 67; Simpson, Contracts [2d ed], § 36). At defendant's direction, its attorneys sent plaintiff a written instrument for execution on its behalf which embodied the same terms as had been proposed by plaintiff and agreed upon at defendant's membership meeting. The sending of the transmittal letter and this formal written instrument for execution constituted sufficient notice of acceptance.

Defendant contends that it never intended to be bound until the written contract was executed by both parties. In determining whether the parties entered into a contract, it is necessary to examine the words and deeds of the parties which constitute the objective manifestations of their intent

(see *Brown Bros. Elec. Contrs. v Beam Constr. Corp.,* 41 NY2d 397, 399). A review of the record demonstrates that the parties had come to a meeting of minds on the terms of their contract and all that remained was the mere memorialization of their agreement in a formal document. As the Court of Appeals explained in the case of *Matter of Municipal Consultants & Publishers v Town of Ramapo* (47 NY2d 144, 148-149): "Generally, where the parties contemplate that a signed writing is required there is no contract until one is delivered *(Scheck v Francis,* 26 NY2d 466; *Schwartz v Greenberg,* 304 NY 250). This rule yields, however, when the parties have agreed on all contractual terms and have only to commit them to writing. When this occurs, the contract is effective at the time the oral agreement is made, although the contract is never reduced to writing and signed. Where all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, the fact, alone, that it was the understanding that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed *(Disken v Herter,* 73 App Div 453, affd 175 NY 480; 1 Williston, Contracts, § 28; see, also, *Matter of Meister,* 39 AD2d 857, affd 32 NY2d 626; *Belmar Contr. Co. v State of New York,* 233 NY 189, 194)." Neither the minutes of the defendant's corporate meeting at which plaintiff's offer was accepted nor the transmittal letter expressly or impliedly reserved the effectiveness of the agreement until the formal contract was signed. Accordingly, we find that the parties duly contracted for the sale of defendant's church edifice to plaintiff.

Defendant next contends that that contract is unenforceable by reason of the Statute of Frauds (see General Obligations Law, § 5-703, subd 2). It is our opinion, however, that the plaintiff's written offer, the signed corporate minutes of the defendant accepting the terms of that offer and the formal unsigned contract prepared by defendant's attorneys which unequivocally refers to the same transaction, when read together, constitute a sufficient memorandum of the contract to satisfy the Statute of Frauds (see *Scheck v Francis,* 26 NY2d 466, 470-471; *Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48, 54-56; *DFI Communications v Greenberg,* 41 NY2d 602, 606-607).

The next question is whether the Referee to hear and determine erred in granting approval of the contract between plaintiff and defendant pursuant to the provisions of certain relevant statutes. Subdivision 1 of section 12 of the Religious Corporations Law provides that in order to sell any of its real property, such a corporation must apply for and obtain leave of court pursuant to section 511 of the Not-For-Profit Corporation Law. Subdivision (d) of section 511 provides that the court may authorize the sale if it appears to the court's satisfaction that: "the consideration and the terms of the transaction are fair and reasonable to the corporation and that the purposes of the corporation or the interests of the members will be promoted [thereby]".

The law is clear that a religious corporation can enter into a valid contract for the sale of its real property without first obtaining court approval *(Muck v Hitchcock,* 149 App Div 323, 328-329, revd on other grounds 212 NY 283; *Congregation Beth Elohim v Central Presbyt. Church,* 10 Abb Prac [NS] 484, 488-489; *Sun Assets Corp. v English Evangelical Lutheran Church of Ascension of Borough Park, Brooklyn,* 19 Misc 2d 187, 192). Although a court of equity may decree specific performance of an executory contract for the sale of the real property of a religious corporation *(Muck v Hitchcock,* 149 App Div 323, 328-329, *supra; Sun Assets Corp. v English Evangelical Lutheran Church of Ascension of Borough Park, Brooklyn, supra,* p 192; *Bounding Home Corp. v Chapin Home for Aged & Infirm,* 19 Misc 2d 653; *Congregation Beth Elohim v Central Presbyt. Church, supra,* p 490), it must first determine, in accordance with subdivision (d) of section 511 of the Not-For-Profit Corporation Law, that the terms and consideration of the transaction are fair and reasonable and that the purposes of the corporation or interests of its members will be promoted by the sale (cf. *Associate Presbyt. Congregation of Hebron v Hanna,* 113 App Div 12, 14). The purpose of this requirement is to protect the members of the religious corporation, the real parties in interest, from loss through unwise bargains and from perversion of the use of the property *(Bowen v Trustees of Irish Presbyt. Congregation in City of N. Y.,* 6 Bosw 245; *Muck v Hitchcock,* 212 NY 283, 287, *supra; Congregation Beth Elohim v Central Presbyt. Church, supra,* pp 488-489; *Madison Ave. Baptist Church v Baptist Church in Oliver St.,* 1 Abb Prac [NS] 214, 224; *Reformed Prot. Dutch Church in Garden-St. v Mott,* 7 Paige Ch 77, 83-84).

It thus appears that the Legislature intended the test to have two prongs. First, the court must determine that the terms and consideration of the transaction were not unwise. In assessing the prudence of the bargain, it is our view that the court should look to the conditions prevailing at the time it was struck. Measured in that light, we agree with the Referee that the contract between plaintiff and defendant was fair and reasonable when made. However, the second prong of the test requires the court to determine that the sale would benefit the corporation or that the best interests of its members would be promoted thereby. We hold that in applying this second prong of the test the court may consider whether corporate purposes would have been served or the best interests of the membership promoted at the time the contract was made, but it should be guided primarily by whether those ends would be realized in light of conditions prevailing at the time the issue is presented to the court (cf. *Wilson v Ebenezer Baptist Church,* 17 Misc 2d 607, 608-609). Examined in this light, it clearly appears that conveyance of defendant's church edifice would now be highly detrimental to the purpose of the corporation and the interests of its members. Sale is now unanimously opposed by defendant's membership because the congregation has merged with another congregation that sold its church as part of the consolidation. Specific performance of this contract would leave the combined congregation of two churches without a house of worship.

It has been said that in making the determination required by section 12 of the Religious Corporations Law and section 511 of the Not-For-Profit Corporation Law the court must either "ratify or veto" the contract of the parties *(Matter of Minister, Elders & Deacons of Ref. Dutch Church in Saugerties,* 16 Barb 237, 241-242). In the case of *Congregation Beth Elohim v Central Presbyt. Church* (10 Abb Prac [NS] 484, 492-493, *supra),* the court clearly explained that although a contract made by a religious corporation for the sale of its property is valid, it is "liable * * * to be defeated" where the court finds it not to be in the best interests of the membership and that where consent to the alienation of the property has been withheld by the court, the contract of sale is "inoperative". It thus appears that contracts for the sale of the real property of a religious corporation are valid, subject to being defeated by the veto of the court, i.e., they are voidable by the court where the two-pronged test of subdivision (d) of section

511 of the Not-For-Profit Corporation Law has not been met. For the reasons stated above, we cannot approve the sale of defendant's property under the present conditions and therefore the contract of sale between it and plaintiff is vetoed and rendered inoperative.

By this determination we do not wish to be understood as holding that a religious society may, at its whim, change its mind as to the sale of its real property after it has entered into a contract of sale but before the requisite court approval has been obtained. Where the seller refuses to perform and the buyer sues for specific performance, the trial court must satisfy itself that the test prescribed in subdivision (d) of section 511 of the Not-For-Profit Corporation Law has been met before awarding relief to the plaintiff. Such a determination must be made on a case-by-case basis because it entails the assessment of differing and often complex facts. Suffice it to say that where the terms and price are reasonable and the sale is only opposed by the membership because of a slightly better offer from some other party, a court of equity should not hesitate to approve the contract and decree specific performance. But where, as here, the sale is opposed by the membership because of merger with another church and the combined congregations now use the edifice, the contract is not in the present best interests of the membership and must be disapproved.

The final issue raised by defendant concerns the question of the money damages awarded by the Referee. Since the contract has been voided, that issue has become academic.

Accordingly, the judgment appealed from should be reversed and plaintiff's complaint dismissed.

HOPKINS, J. P., MARTUSCELLO and WEINSTEIN, JJ., concur.

Judgment of the Supreme Court, Kings County, entered July 5, 1979, reversed, on the law and the facts, without costs or disbursements, and plaintiff's complaint is dismissed.